Carr, J.
 

 The defendant in this case is a public corporation organized under the provisions of PA 1939, No 147 (CL 1948, § 119.51
 
 et seq.
 
 [Stat Ann § 5.2148(1)
 
 et seq.]).
 
 Said act authorized the counties of Wayne, Washtenaw, Livingston, Oakland and Macomb, to join in a metropolitan district for the purpose of establishing, owning and developing public parks, with connecting drives and highways. The electors in said counties accepted the provisions of the act in accordance with the procedure outlined therein. The governing authority is a board of 7 commissioners, 1 chosen by the board of supervisors
 
 *261
 
 in each of the counties named, and the remaining 2 appointed by the governor of the State.
 

 In 1946, the defendant’s board of commissioners had under consideration the establishing of the Kensington Metropolitan Park along the Huron river in the townships of Milford and Lyon, Oakland county, and the township of Brighton, Livingston county, referred to in the record as the Kent Lake Park Project. To accomplish the desired result in accordance with the plans it was necessary to dam the river and to enlarge 2 natural lakes in the area into an artificial lake covering approximately 1,200 acres. It was necessary also, for reasons of safety and appearance, to cut and remove trees, stumps, shrubs and brush, which otherwise would have extended above the surface of the artificial lake, or that would have created an undesirable condition beneath the surface. To determine the elevation of the property in the area a topographical survey had previously been made. In planning the project it was determined that the surface of the lake might properly be established at an elevation of 883 feet above sea level. Stakes were placed to indicate the location of contour lines. The testimony in the record indicates a difference of opinion as to whether such stakes were accurately placed. The construction of a dam in the river was begun for the purpose of flooding the area in the spring of 1947.
 

 The work of removing trees, stumps and brush, from the area was begun by defendant, and some progress made. Doubts arising as to whether the work would be completed by defendant’s employees by the time the dam was finished, it was determined to have the clearing done under contract. Preliminary thereto, a map was prepared by defendant’s engineers. An aerial survey made in 1937, which apparently consisted of a group of photographs of
 
 *262
 
 the area put together in accordance with a definite scale, was used. Said photographs are referred to in the record as a “mosaic.” It is also claimed that the knowledge and experience of the defendant’s engineers and field men, personally familiar with the land in question, entered into the preparation of the map. The contour lines were superimposed on the aerial survey and the parcels of land necessary to he cleared were outlined. After the lines on the map had been established a planimeter was used to measure the areas of the parcels to he cleared, and the number of acres in each such parcel, determined by this method, was noted. The testimony indicates that a planimeter is an engineering device used in determining the areas of irregular parcels of land, and that to obtain approximately accurate results with it requires skill and care. The map as finally completed indicated 161.01 acres of heavy clearing, 118.33 acres of light clearing, and 19.35 acres of brush clearing, or a total acreage to be cleared of 298.69. The nature of the clearing work in any area was not, it appears, determined in accordance with any set formula, but was wholly a matter of judgment.
 

 The plaintiffs in the case were, during the year 1946, engaged as copartners in contracting work. Inasmuch as Eugene B. Schwaderer was the active partner in charge of the business and represented himself and his copartner in all negotiations and dealings with the defendant, we refer to him herein, for. brevity and convenience, as the plaintiff. His testimony in the case discloses that he had been engaged in the contracting business, including work of the nature involved in the instant case, for approximately 25 years.
 

 A member of the board of commissioners of the defendant contacted plaintiff and sought to interest him in the clearing of the land for the proposed lake.
 
 *263
 
 After looking over the site plaintiff came to the conclusion that he was not interested. Subsequently, however, a meeting was arranged at the project, at which plaintiff, defendant’s commissioner above referred to, its consulting engineer, and its engineer director, were present. The parties looked over the property and a conversation occurred with reference to the price for which plaintiff would be willing to accept a contract to do the necessary clearing. In the course of such conversation plaintiff indicated that an average of $200 per acre would be satisfactory. He was shown the map above referred to, upon which the parcels to be cleared, and the acreage in each, were indicated. Plaintiff claims it was understood by the parties that defendant’s representatives would attempt to negotiate a contract between plaintiff and the board of commissioners for the doing of the clearing on the basis of $200 per acre. Subsequently-he was advised that because of the nature of the work it would not be possible to let a contract without advertising for competitive bids. He further testified on the trial that he was- asked to submit a bid on the basis of $200 an acre and that he agreed to do so.
 

 It was the claim of the plaintiff, as alleged in his.bill of complaint and stated in his testimony, that he relied on the accuracy of the map, and the figures thereon, shown to him by defendant’s representatives, and that he prepared his bid on the basis of $220 per acre for heavy clearing, $180 per acre for light clearing, and $130 per acre for brush clearing, computing the total amount in accordance with the representation made to him as to the acreage in each class. Accordingly he submitted a bid in the sum of $59,237.10, or an average of approximately $200 per acre for the total represented acreage. His bid being low it was accepted, and a written contract was entered into for the doing of the work for the
 
 *264
 
 lump-sum price named in the bid. A performance bond in the sum of $50,000 was executed, and also the statutory labor and material bond in a like amount. By reference the contract incorporated the specifications which set forth the number of acres in each class of clearing as shown on the map, indicating, however, that the acreage was “estimated-—• not guaranteed.”
 

 Plaintiff proceeded with the work of clearing the land, as required by the contract. No claim is made that he did not perform in a proper and satisfactory manner. He discovered in the course of his operations that the land in some of the parcels cleared exceeded materially the figures represented to him. Thereupon he discussed the matter with the engineer director of the defendant and was assured that while some parcels might overrun others would quite probably contain less than the acreage shown on the map, and that-the total acreage to be cleared would be approximately as contemplated. Subsequent conversations were of like tenor. At the insistence of defendant, plaintiff completed the contract. He then procured a competent engineer to make a survey of the land that he had cleared. The result indicated that plaintiff had actually cleared 545.46 acres. The trial court determined that the land cleared exceeded the indicated acreage on defendant’s map, on which plaintiff relied in submitting his bid, by 246.77 acres, and that such excess should be classified as brush clearing.
 

 Plaintiff sought an adjustment of the matter but defendant took the position that inasmuch as the contract was based on the payment of a lump sum for the doing of the work it was not liable for more than the amount stipulated. Thereupon plaintiff instituted the present action, seeking relief on the bases of fraud, misrepresentation, and mistake. The prayer for relief asked specifically for reformation
 
 *265
 
 of the contract and for general relief in accordance with equity and good conscience. After listening to the proofs of the parties, the trial judge made a finding of facts, which he dictated on the record, substantially in accordance with the claims of the plaintiff. A written opinion based on such findings was filed, setting forth that the map and acreage specifications prepared, and used by defendant were inaccurate and misleading, that such fact was or should have been known to defendant’s officers and agents, that plaintiff relied upon the information given him in preparing his bid, and that as a result the defendant had been unjustly enriched.
 

 The trial court determined that the contract should be reformed in such manner as to give effect to the intention of the parties and do justice between them. It was his opinion that the specifications for the doing of the work should have recited “brush clearing 266.12 acres,” and that as a matter of computation the bid submitted by plaintiff, on the basis on which he prepared it, would,, in such event, have been $91,317.20. A decree was entered in accordance with the opinion filed. Defendant has appealed, and plaintiff has cross-appealed on the ground that the court was in error in fixing the price for clearing the excess acreage at $130 per acre instead of $200 per acre.
 

 The record fully substantiates the conclusion that plaintiff relied on the map, and the acreage figures thereon, in submitting his bid and entering into the contract. It is undisputed that he did not have requisite time, after the board of commissioners of the defendant determined to advertise for bids, in which to make a survey of the parcels of land to be cleared. In determining the amount of his bid, he accepted as correct the representations of the defendant’s ■officers and agents. The fact that the specifications set forth the acreage figures appearing on the map
 
 *266
 
 was in the nature of an added assurance as to their accuracy. The inspections that he made of the property were casual in nature and involved no attempt to ascertain the acreage in any parcel. He was entitled to rely on the statements made to him by defendant’s officers and agents, and the latter, under the facts disclosed by the record, must have known that he was doing so. The request to him that he submit a lump-sum bid on the basis of $200 per acre clearly contemplated that he would rely, in making-such bid, on the map that had been exhibited to him. The discussion, above referred to, proceeded on the assumption that the figures indicating the number of acres in each parcel were correct. It may be noted further that plaintiff was given no explanation as to how the map was prepared, or the acreage indicated thereon computed. Had this been done it might have served as a warning of possible inaccuracy. It is clear that the map was grossly inaccurate and misleading. Defendant’s engineer director admitted on the witness stand that excess acreage was cleared by plaintiff, and fixed such excess at approximately 90 acres.
 

 It is urged by defendant that the survey made in plaintiff’s behalf, after the work of clearing was completed, is open to question as to accuracy. The trial court accepted it, and we think was fully justified in so doing. The record indicates that the survey was carefully made, and precautions taken to avoid errors. Defendant did not itself procure an actual survey of the parcels in question. It is a logical inference that it would have done so had there been satisfactory reasons to question the results reported by plaintiff’s engineer.
 

 The principal question in the case is whether a court of equity may grant relief under the facts stated. As we understand defendant’s position it is that plaintiff, if he has a remedy, should pursue
 
 *267
 
 it at law. However, the arguments advanced, if well founded, lead to the conclusion that because the contract in question called for the doing of certain work for a lump-sum consideration plaintiff is without remedy' either at law or in equity. "We are unable to agree with defendant’s claim. Fraud and mistake are common grounds on which to invoke the jurisdiction of equity and the fact that, under particular circumstances, an action for damages may be brought at law does not foreclose the granting of equitable relief if the facts justify it. Had plaintiff discovered the true situation before entering on performance under the contract, he might have sought, and obtained, rescission. See
 
 Kutsche
 
 v.
 
 Ford,
 
 222 Mich 442;
 
 Hedler
 
 v.
 
 Manning,
 
 252 Mich 195.
 

 In
 
 Hillier
 
 v.
 
 Carpenter,
 
 206 Mich 594, suit was brought for reformation of a contract for the exchange of real property, plaintiff alleging fraud in the transaction. The trial court found that misrepresentations with reference to market value and net income had been made by defendant,- and granted the relief sought. This Court concluded that the rights of the parties might best be protected by decreeing a rescission, with an accounting as to rents and profits, and modified the decree accordingly. In commenting on the alleged misrepresentations, it was said:
 

 “If they were actually made and were false it' is unnecessary to determine whether they were made in good faith.
 
 Yanelli
 
 v.
 
 Littlejohn,
 
 172 Mich 91;
 
 Houder
 
 v.
 
 Reynolds,
 
 195 Mich 256.”
 

 As a general proposition, equity will not reform a contract on the ground of mistake, unless it appears that such mistake was mutual. It has been repeatedly held, however, that such relief may properly be granted where there is a mistake on the part of a plaintiff and fraudulent conduct on the part of
 
 *268
 
 a defendant, resulting in an inequitable situation.
 
 Retan
 
 v. Clark, 220 Mich 493. Parol evidence to establish the fraud or mistake is competent.
 
 Goldberg
 
 v.
 
 Cities Service Oil Co.,
 
 275 Mich 199, 209.
 

 In
 
 Lee State Bank
 
 v.
 
 McElheny,
 
 227 Mich 322, plaintiff brought suit to reform a mortgage by striking out the description of one parcel included therein and inserting a description of another parcel. It was the claim of the plaintiff that defendant Mc-Elheny had, in the agreement leading up to the giving of the mortgage, consented that the instrument should cover all the property that he owned. Apparently he held an unrecorded deed to the property that plaintiff sought to have included in the instrument. In sustaining the decree of the trial court granting the relief sought, it was said:
 

 “Courts do not make contracts for parties, and this truism has given rise to the cautionary rule requiring clear and satisfactory evidence of a mutual mistake before reforming a written instrument. Back of nearly every written instrument lies a parol agreement, merged therein, but the writing controls unless a court of equity, on invocation of its power, finds the writing does not express what the minds of the parties met on, and intended, and supposed they had expressed, but which miscarried by mutual mistake. Was the fact of a mutual mistake clearly and satisfactorily established by the evidence? There was either a mutual mistake, or a mistake by the bank, accompanied by fraud on the part of Mr. McElheny, and either one gives right to have reformation as to Mr. McElheny.”
 

 In
 
 Ross
 
 v.
 
 Damm,
 
 271 Mich 474, in which reformation of a deed was sought, it appears that a surveyor had erroneously placed a stake marking a boundary line. Right to reformation as to the parcel concerning which the mistake had been made was granted. The decision was cited with approval
 
 *269
 
 and followed in
 
 Blake
 
 v.
 
 Fuller,
 
 274 Mich 534. There the decree of the trial court reformed a deed, which in terms described a single lot, by adding the description of a small adjacent parcel.
 

 In
 
 Barryton State Savings Bank
 
 v.
 
 Durkee,
 
 325 Mich 138, a land contract had been executed by plaintiff to defendants, reserving an interest in oil, gas, and other minerals, for a period of 25 years. Defendants paid up the land contract and received a deed which did not contain the reservation although it made reference to the contract. Some years later plaintiff brought action to reform the deed by inserting the reservation. Defendants claimed that they knew that the reservation was not contained in the deed but did not call the attention of plaintiff to the matter. The trial court denied relief on the ground that the mistake was not mutual. This Court, quoting with approval from the opinion in
 
 Retan
 
 v.
 
 Clark, supra,
 
 reversed the decree and granted the relief sought, applying the rule recognized in many decisions of this Court that equity may grant reformation in a proper case if the mistake is mutual or if there is mistake on the part of the plaintiff or plaintiffs and conduct fraudulent in nature on the part of the defendant or defendants. Of like import are:
 
 Osterhout & Fox Lumber Co.
 
 v.
 
 Rice,
 
 93 Mich 353;
 
 Davis
 
 v.
 
 Keys,
 
 252 Mich 580;
 
 Holbeck
 
 v.
 
 Williamson,
 
 255 Mich 430. See, also,
 
 Hersey Gravel Co.
 
 v.
 
 State Highway Department,
 
 305 Mich 333 (173 ALR 302);
 
 W. H. Knapp Co.
 
 v.
 
 State Highway Department,
 
 311 Mich 186.
 

 In the case of
 
 DeGood
 
 v.
 
 Gillard,
 
 251 Mich 85, suit was brought to reform an excavating contract into which the parties had entered. The number of cubic yards of cut and fill had been computed by the city engineer of Grand Rapids, and the parties in their contract expressly provided that such computation was accepted by the plaintiff. The contract provided
 
 *270
 
 for a lump-sum price for the work covered. Following the completion of the work it was discovered that the figures of the city engineer were erroneous. The trial court granted reformation in accordance with plaintiff’s claim, but this Court reversed the decree, holding that plaintiff was bound by his agreement to accept the figures of the city engineer. It was indicated that plaintiff had perhaps made a mistake in accepting the computation but that there was no mutual mistake in the contract justifying its reformation, and, further, that:
 

 “Defendants are guilty of no fraud, concealment, or misrepresentation to bring this case within an exception to' the rule of mutual mistake that where there is mistake bn one side and fraud or inequitable conduct on the other reformation may be decreed.”
 

 In the case at bar, the prior negotiations between the parties indicated the intent with which they entered into the written contract. The record clearly .shows that plaintiff, at least, considered that he was entering into an agreement for the clearing of the acreage indicated by defendant’s map, on which he had a right to rely and did rely. The request to him to submit a bid on the basis of the average price per acre as discussed by plaintiff. and defendant’s officers and agents is significant. Because of the mistake, induced by the misrepresentations made to plaintiff, the contract, as written, in terms required the clearing of a much larger acreage than contemplated, for a consideration determined on the basis of the designated acreage in the parcels shown on the map. Because of the mistake that was made, the price named in the contract was not based on the work actually required by the plans for the project, and was materially less than a fair compensation therefor arrived at on the basis contemplated by the parties. Under the facts in the case the conclusion
 
 *271
 
 is fully justified that defendant accepted the map as correct and, like the plaintiff, entered into the contract under a mistake of fact. If the mistake was not mutual, then the situation is one in which there was a mistake on the part of the plaintiff and conduct on the part of defendant, acting through its officers and agents, of such character as to justify the granting of equitable relief.
 

 If plaintiff is, as defendant argues, without remedy, the result is that defendant, as pointed out by the trial court, has been unjustly enriched through the performance of the contract by plaintiff in reliance on the representations made to him. To prevent such enrichment, resulting from mutual mistake, equity may properly grant relief. In
 
 Moritz
 
 v.
 
 Horsman,
 
 305 Mich 627 (147 A ALR 117), this Court quoted with approval from
 
 Reggio
 
 v.
 
 Warren,
 
 207 Mass 525 (93 NE 805, 32 LRA NS 340, 20 Ann Cas 1244):
 

 “The important question was not whether the mistake was one of law or of fact, but whether the particular mistake was such as a court of equity will- correct, and this depends upon whether the case falls within the fundamental principle of equity that no one shall be allowed to enrich himself unjustly at the expense of another by reason of an innocent mistake of law or of fact entertained by both parties.”
 

 Plaintiff’s cross appeal was, as before noted, based on the claim that the court was in error in treating the excess acreage as brush clearing. It is contended in substance that it should have been regarded as comprising heavy clearing, light clearing, and brush clearing, in the same ratio as was shown on the map on which plaintiff- relied in submitting his bid. There is in the record no specific proof on which to base a definite finding as to the actual character of the clearing on the excess acreage. One of
 
 *272
 
 defendant’s witnesses, its engineer director, gave testimony indicating that a portion of the excess was made np of parcels on which brush and shrubs had grown during the period between the making of the aerial survey in 1937 and the doing of the work by plaintiff in the winter of 1946, 1947. In view of the absence of specific proof, we think the trial judge was right in placing the excess acreage in the category of brush clearing. The burden of proof with reference to the matter rested on the plaintiff, and we are not at liberty to indulge in speculative inferences.
 

 The decree is affirmed, without costs to either party.
 

 Reid, C. J., and Boyles, North, Dethmers, Butzel,, Bushnell, and Sharpe, JJ., concurred.