In re IMPEL MFG. CO.
No. 31852.

United States District Court
E. D. Michigan Southern Division.
Oct. 21, 1952.

470

Fischer & Fischer, Detroit, Mich., for appellant.

Lewis Daniels, Detroit, Mich., for trustee.

KOSCINSKI, District Judge.

This petition for review was filed by the State Plumbing and Heating Supplies, Inc., a Michigan corporation, from an order of Walter I. McKenzie, Referee in Bankruptcy, denying rescission or cancellation of a contract and restitution of money paid in reliance on validity of the contract. The Referee found the contract to be void and not enforceable, but denied rescission on the grounds that petitioner's conduct was inconsistent with rescission.

On January 11, 1949, the above-named bankrupt filed a petition for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. On January 12, 1949 Leslie L. Mitchell, the holder and owner of all the stock of the corporation, and Julian G. McIntosh were appointed co-trustees and authorized by an order of the court to carry on the business of the company pending approval of a plan of reorganization, which action was taken with the approval of the creditors.

On July 8, 1949, the proceedings were transferred from Chapter X to Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq., on petition with schedules, statement of affairs, and proposed plan of arrangement, following which a General Order of Reference to the Referees in Bankruptcy was made.

The debtor's inability to consummate an approved plan of arrangement resulted in an Order of Adjudication being entered on January 16, 1950.

On December 2, 1949 the State Plumbing and Heating Supplies, Inc., filed a petition "for cancellation of contract, and refund of money paid under terms of contract, for accounting and for order requiring payment thereof as administration expense."

A motion to dismiss the petition was filed by the trustees and denied after hearing. Separate answers to the petition were filed by the co-trustees. Following several days hearings on the petition and answers, the Referee entered an order denying the petition for rescission and restitution. It is this order that is sought to be reviewed here.

From the admitted facts, in addition to facts found by the Referee on conflicting testimony, it appears that on August 4, 1949, during these bankruptcy proceedings, a sales agreement was entered into between the "Impel Manufacturing Company, manufacturers," and the petitioner, State Plumbing and Heating Supplies, Inc., wholesale plumbing and heating company, for the sales and promotion of the Kindl-aire Conversion Gas Burner, which was being manufactured by the Impel Manufacturing Company. A number of warranties were made by the Impel Manufacturing Company as an inducement to the making of the contract. Among the warranties was one which guaranteed that no parts of the gas burner infringed on any patent rights; that all parts of the gas conversion burner complied with American Gas Association approval; a guarantee against defects on all parts of the gas burner for one year; and exclusive sales rights in the State of Michigan. The first one thousand burners were to be delivered by the Impel Manufacturing Company to petitioner at the price of $52 each, following which an adjustment would be made on the price per unit.

The above agreement was signed for the Impel Manufacturing Company by "Leslie L. Mitchell, President, and J. G. Knaggs, Secretary and Vice-President." On behalf of appellant the contract was signed by Morris Canvasser, President. The Referee found that at the time of the signing of the contract, no reference was made to the fact that proceedings were pending in this Court under Chapter XI of the Bankruptcy Act, nor was the contract submitted to the Court for consideration or approval.

This document of August 4, 1949, was referred to as a "contract" throughout the proceedings before the Referee and this Court, as well as in the briefs filed here, and it will be so referred to herein, although the very issue before this Court is the determination of that question.

The Referee further specifically found that the joint action of both co-trustees was necessary to the making of a valid contract; that the attempted contract gave exclusive sales rights in the entire State of Michigan

472

to petitioner, and that the approval of the Court should have been obtained; that it was not signed by Leslie L. Mitchell as co-trustee for the debtor company, nor was the signature of Julian G. McIntosh, the other co-trustee, obtained in the execution of the contract. The Referee found the attempted contract was never ratified by the co-trustees and that is was unenforceable against the estate.

The further question presented to the Referee was whether the State Plumbing and Heating Supplies, Inc., had rescinded the contract, and whether or not its conduct was consistent with its claim of rescission.

The Referee found that Julian G. McIntosh, the co-trustee, had no knowledge of the execution of the contract of August 4, 1949 until on or about September 24, 1949, during a telephone conversation between himself and counsel for appellant, at which time Mr. McIntosh denied liability on behalf of the bankrupt estate for two reasons, first, lack of knowledge and, second, that it was not submitted to the court.

The Referee further found that on September 14, 1949, during pendency of the bankruptcy proceedings, the Impel Manufacturing Company, by Leslie L. Mitchell, the seller, made a second written agreement, this time with Charles Canvasser, who was an officer and stockholder of the State Plumbing and Heating Supplies, Inc., which agreement in substance reincorporated the terms of the sales agreement of August 4, 1949. That was the day on which Charles Canvasser testified he first learned about the arrangement proceedings in the Bankruptcy Court, and that the contract was signed on September 14, 1949 and dated a day later. This agreement was entered into by Mitchell in the belief that he would be successful in consummating the Plan of Arrangement, and as of the 23rd of September, 1949, his modified arrangement plan was accepted by a majority in the number and amount of creditors. Subsequent events proved that he was not successful in depositing the necessary funds to carry out the arrangement, and adjudication followed.

It will be noted that the contract of September 14 was made and entered into by Charles Canvasser, personally, and not by the State Plumbing and Heating Supplies, Inc. It does not appear that any further action was taken by either party under the conditions of the last-mentioned agreement subsequent to its execution. It appears to have been an effort to salvage the investment of the State Plumbing and Heating Supplies, Inc. of over $30,000 under the void sales agreement of August 4, 1949.

Accompanying the sales agreement of August 4, 1949, was a purchase order of the same date made out on stationery of the State Plumbing and Heating Supplies, Inc., to the Impel Manufacturing Company for one thousand Kindl-aire conversion gas burners "as per temporary sales agreement." The Referee, in his findings, states "Since the sales agreement was not enforceable it leaves the company with the purchase order to rely upon."

But, that sales order and others made in pursuance of the void August 4, 1949 agreement are subject to the same infirmity as the contract itself.

The Referee further held that if petitioner was not satisfied "They should take action promptly to rescind the contract or purchase order and ask the Court to relieve them from the burdens entailed by that order. While there is some question as to the fact that the officials of State Plumbing and Heating Supplies, Inc. did not know about the arrangement prior to September 14, it seems strange that purchase orders should have come through, checks had been issued, checks countersigned, and so forth, by both trustees without someone observing it. But accepting September 14 date as the correct date, on that date, Mr. McIntosh testified, there was no claim of rescission by Mr. Fischer, representing the State Plumbing and Heating Supplies, Inc., *but there was discussion between them extending over a period of a number of weeks."* (Emphasis supplied). From here on, the Referee finds a conflict in the testimony of Charles Canvasser and Morris Canvasser as to what efforts were made by the petitioner to sell the burners subsequent to September 14, 1949. Morris Canvasser testified that petitioner continued its attempts to sell the burners up to and includ-

ing January 31, 1950, while Charles Canvasser testified that there was little attempt to sell the burners after September 14, 1949; Morris Canvasser stated that on January 31, 1950 there were 500 converted burners on hand, while the petition filed on December 2, 1949 represented that there were only 605 burners on hand at the time.

The Referee concludes: "This offer of converted burners with only 605 on hand indicates that the company must have intended to purchase more burners to fill the order. All of these actions on the part of State Plumbing and Heating Supplies, Inc. is entirely inconsistent with the idea of rescission. If they had found that they have been injured, that they have been defrauded, and such action being entirely inconsistent with that, the Court must find that the petition will be denied."

■ It is the law that this Court must accept findings of facts based on disputed evidence unless clearly erroneous. Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. Any inferences drawn from evidence which is contradictory or from which different inferences can be drawn, must likewise be accepted.

However, if the inference is from undisputed facts or documentary evidence, the reviewing court is not bound by the findings of the Referee. For when this is the situation, a reviewing court is free to draw its own inferences. Home Indemnity Co. of New York v. Standard Accident Insurance Company, 9 Cir., 167 F.2d 919, 923.

The reasons behind these holdings are that where the Referee's finding is no more than a conclusion from facts which are not disputed, the reviewing court is in as good a position to draw a proper conclusion as is the Referee.

It is quite evident, that ordinarily, the District Judge, in reviewing the acts of the Referee, will not substitute his own judgment for that of the Referee who heard the evidence. At the same time, if the Referee's conclusions are clearly erroneous, there is no hesitancy in reversing him.

General Order No. 47 requires the District Judge to adopt the Referee's report, to modify it or supplement it, or reject it.

Implicit in the General Order is the requirement that the District Judge pass upon the Referee's findings, adopt or modify them, or, if necessary, make findings of his own.

The review cannot be turned into a trial de novo.

See comments of Judge Yankwich "A Judge's Comments on Bankruptcy Reviews", 9 F.R.D. 575, 583–589, and cases there cited.

The Referee, having decided that the contract of August 4, 1949, was void and unenforceable, and that it was not ratified by the co-trustees of the debtor, which findings are not disputed, the sole remaining issue to be determined on review is the conclusion reached by the Referee that petitioner's conduct was inconsistent with rescission claimed by petitioner under its petition for rescission filed December 2, 1949— approximately eleven weeks from the time the Referee found that petitioner had knowledge of the proceedings under the Bankruptcy Act in this Court, involving the bankrupt herein.

■ The purchase order for one thousand burners by petitioner to Impel Manufacturing Company being of the same date as the attempted sales agreement of August 4, 1949, and issued in pursuance thereof "as per temporary sales agreement," is subject to the same infirmity as the original sales agreement, since the expression "as per" is commonly understood to mean "in accordance with, or, in accordance with the terms of". 4 Words and Phrases, pp. 317, 318.

■ Since the contract was void and unenforceable, it could under no circumstances be enforced against the Impel Manufacturing Company, the debtor, or against Debtor's co-trustees. Trustees were charged with the duty of acting jointly. The attempted contract was not signed by co-trustee Julian G. McIntosh, he had no knowledge of it until September 14, 1949, and he eventually repudiated it. The contract could not be enforced against co-trustee Leslie L. Mitchell, first, because he did not sign as trustee, and, second, because even though he might have signed as co-

474

trustee, the contract would be a nullity without the signature of both co-trustees, and the approval of the Court, considering the importance of the obligations undertaken in favor of the State Plumbing and Heating Supplies, Inc., who could not have specific performance or damages against the co-trustees.

■ Generally, where specific performance would be refused, rescission will be decreed; rescission being more nearly matter of right than specific performance. Wilson v. Lingon, 260 Mich. 134, 244 N.W. 426.

There was a total lack of authority or legal capacity on the part of Leslie L. Mitchell to enter into the attempted contract. This alone would warrant a cancellation.

The contract was void ab initio for want of mutuality, also warranting a cancellation. Petitioner here had no remedy of enforcing the promises and warranties and undertakings made in the contract of August 4, 1949 by the Impel Manufacturing Company. The Impel Manufacturing Company was under a legal disability at the time and its officers Leslie L. Mitchell and J. G. Knaggs were without authority to bind the corporation, which could only act through its two co-trustees under direction of the Court.

Under these circumstances it would be inequitable to have the co-trustees retain the monies paid to them by petitioner when petitioner was without remedy, except cancellation or rescission, to enforce the conditions and provisions of the abortive contract.

■ But it is claimed here on the part of the debtor that petitioner is estopped from obtaining cancellation or rescission because of its acts or omissions inconsistent with such purpose. In considering a claim to cancellation of a contract, each case depends in large measure on the circumstances of that particular case.

It is the general rule that any transactions relating to the subject matter of the contract and inconsistent with an intention to rescind will preclude a rescission. 12

C.J.S., Cancellation of Instruments, § 38, p. 997.

In the eleven intervening weeks between September 14, 1949, when petitioner first learned of the debtor's bankruptcy proceedings, and December 2, 1949, when debtor filed its petition to cancel the contract, debtor made efforts, partly in cooperation with Julian G. McIntosh, the co-trustee, to sell the gas burners which debtor had acquired as a result of the contract of August 4, 1949. These efforts proved unavailing.

■ In considering debtor's actions following September 14, 1949 as relating to disaffirmance of the contract, or laches in taking action to disaffirm the contract, or inconsistency of its actions with disaffirmance, rescission or cancellation of the contract, due regard must be had for the unusual conditions and circumstances confronting petitioner.

The Impel Manufacturing Company was in bankruptcy proceedings under Chapter XI of the Bankruptcy Act; petitioner had paid upwards of $30,000 to the debtor for gas burners, of which it sold only a small fraction; this money was in the hands of the co-trustees for the Impel Manufacturing Company, who could not disburse funds in their possession except in the usual course of business and by direction and authority of an order of the court; the possibility of the recovery by petitioner of the money paid out to the "Impel Manufacturing Company," as distinguished from the trustees who were operating it was a dubious one.

Faced with these problems, petitioner decided to make some effort to sell all or part of the gas burners which it had on hand, either to recoup its loss or to reduce it.

■ There was no such unusual delay here which would bar petitioner in asserting its claim of cancellation or rescission. The record shows that the delay here was at least partially due to Mitchell's continued assurances to petitioner that he would be out of the bankruptcy court soon and would carry out the terms of the contract of August 4, 1949. This undoubtedly led to the

making of the second abortive contract dated September 14, 1949 between Mitchell and Charles Canvasser. The situation from a legal standpoint was a difficult one, the outcome uncertain. Petitioner acted in the haze of those legal uncertainties brought about by Mitchell's unauthorized acts.

Under these conditions, the unavailing efforts made by petitioner to sell the gas burners were not inconsistent with its claim of rescission or cancellation made during the eleven weeks after it learned of the true conditions.

The Referee found that when the contract of August 4, 1949 was entered into, Mitchell withheld information of the bankruptcy proceedings from petitioner. This amounted to fraud which would vitiate the contract ab initio, depriving Mitchell of the ability to carry out and perform the obligations which he had wrongfully undertaken on behalf of the Impel Manufacturing Company.

A number of petitioner's checks payable to "Impel Manufacturing Company" were deposited by Impel's co-trustees in the National Bank of Detroit. All the indorsements were made by a rubber stamp carrying the indorsements in print "Impel Manufacturing Company, Leslie L. Mitchell and Julian G. McIntosh, co-trustees."

■ It is claimed on behalf of the co-trustees that when these cancelled checks were returned by the bank to petitioner, it had notice of the fiduciary character in which they were acting in the bankruptcy proceedings. In any event, the record of the proceedings before the Referee, as well as the findings of the Referee, are barren of any evidence of the date on which the cancelled checks were returned to petitioner by the bank. Also, there is no showing that the cancelled checks were returned, or brought to the attention of the responsible officers of petitioner between August 4, 1949 the date of the void contract and September 14, 1949, when petitioner first learned of the bankruptcy proceedings.

It may be that some individual depositors with a small number of returned cancelled checks will scan the indorsements thereon, but it is not the practice nor is it expected that the principal officers of a manufacturing, industrial or commercial corporation will undertake to do so where there are many employees and many cancelled checks returned each month, where, as here, petitioner had an annual gross business of one million dollars.

If cancellation or rescission be denied to the petitioner, it will result in the co-trustees retaining the money paid under the contract of August 4, 1949, although without any duty, obligation or responsibility to abide by the terms of the contract under which that money was received by them. Petitioner can neither be awarded specific performance of that contract nor proceed for damages as for breach of contract.

■ One who pays money to another in order to obtain the performance of a promise given by another is entitled to restitution from the other upon failure to obtain the benefit for which the money was given. Restatement of The Law, Restitution, Sec. 47, pp. 192, 193. See also Sec. 15 of the same volume, pp. 61, 66, and 69, to the effect that one is entitled to recover money paid to another under the mistaken belief by the payor of the existence of a contract with the payee.

■ In Michigan it is recognized that a void contract is not enforceable and affords the innocent party the right of restitution. Blair v. Lux, 256 Mich. 463, 240 N.W. 54; Groves v. Jones, 252 Mich. 446, 233 N.W. 375; Rott v. Goldman, 236 Mich. 261, 210 N.W. 335; London v. Singer, 224 Mich. 411, 195 N.W. 42, 32 A.L.R. 1363; Rothstein v. Weeks, 224 Mich. 548, 195 N.W. 49; Kuchenmeister v. Dusza, 218 Mich. 497, 188 N.W. 337; Hoyt v. Paw Paw Grape Juice Co., 158 Mich. 619, 123 N.W. 529; Adler v. Katus, 190 Mich. 86, 155 N.W. 707. See also Restitution, Restatement of The Law, Rule 15, pp. 61, 62, 66, and Rule 16, p. 69, which recognizes the right to restitution of the amount paid to another under the mistaken belief in the validity of the contract with the payee.

■ Even though Mitchell in this case believed that the contract was valid and enforceable, and without proof of fraud on

his part, petitioner would be entitled to restitution. This would be so regardless of whether the mistake was one of law or of fact. Schwaderer v. Huron-Clinton Metropolitan Authority, 329 Mich. 258, 45 N.W.2d 279. See also Moritz v. Horsman, 305 Mich. 627, 9 N.W.2d 868, 871, 147 A.L. R. 117, quoting with approval Reggio v. Warren, 207 Mass. 525, 93 N.E. 805; 32 L.R.A.,N.S., 340, 20 Ann.Cas. 1244.

 Mitchell's warranties to petitioner were worthless under the August 4, 1949 contract. Rescission will be decreed when there is a failure to perform a substantial part of the contract or one of its essential items, or when the contract would not have been made if default in that particular had been expected or contemplated—Slaggert v. Case, 319 Mich. 200, 201, 29 N.W.2d 280; Rosenthal v. Triangle Development Co., 261 Mich. 462, 246 N.W. 182; City of Grand Haven v. Grand Haven Water Works, 99 Mich. 106, 57 N.W. 1075; I Black on "Rescission and Cancellation" (2 Ed.) p. 553.

The Uniform Sales Act, Sec. 69 (d), § 440.69, C.L.Mich.1948, provides that where there has been a breach of warranty by the seller, the buyer has an election of remedies, and specifically provides for the right to rescission of the contract, and for the recovery of the purchase price upon the return of the goods or an offer to return the goods to the seller.

The promises and undertakings contained in the contract of August 4, 1949, are all express warranties under Sec. 12 of the Uniform Sales Act, § 440.12, C.L.Mich. 1948.

Unavailing efforts to dispose of the thing purchased do not constitute ratification. 12 C.J.S., Cancellation of Instruments, § 38b, p. 1000, and cases cited in footnote.

In a late case, Kelley v. Hoogerhyde, 314 Mich. 37, 22 N.W.2d 63, it was held that mere lapse of time, without a showing of prejudice, will not constitute laches in barring of a suit for restitution. It was there further stated that while evidence of lapse of time should be considered with other facts and circumstances of a case in determining laches, laches will not be permitted to defeat recovery in equity if it would be inequitable to do so, the court cit-

ing previous cases such as Chamski v. Wayne County Board of Auditors, 288 Mich. 238, 252, 284 N.W. 711; Cudahy Brothers Co. v. West Michigan Dock & Market Corp., 285 Mich. 18, 280 N.W. 93; Smith v. Sprague, 244 Mich. 577, 222 N.W. 207, and other cases. Besides, plaintiff is not amenable to the doctrine of laches during the time he is putting forth efforts or carrying on negotiations to obtain a compliance with the contract, restitution, or a peaceful settlement. 12 C.J.S., Cancellation of Instruments, § 51b, p. 1025. Mulheron v. Henry S. Koppin Co., 221 Mich. 187, 190 N.W. 674; Bayley v. Friedberg, 226 Mich. 125, 197 N.W. 559; Beloskursky v. Jozwiak, 221 Mich. 316, 191 N.W. 16; Plate v. Detroit Fidelity & Surety Co., 229 Mich. 482, 201 N.W. 457; LaForce v. Caspian Realty Co., 242 Mich. 646, 219 N.W. 668.

Unsuccessful efforts by petitioner to sell the gas burners on hand as a result of the contract of August 4, 1949, did not amount to such act of ownership as will bar petitioner's right to rescind. Nor will such efforts amount to a ratification of the contract or waiver of the right to rescind. Black on Rescission and Cancellation, p. 1384.