CAVANAGH, J.
(concurring). Obviously, I concur with the well-written majority opinion in this case. I write separately, however, to set forth additional reasons why I believe Ford has stated valid claims under MCL 211.53a. Specifically, the history surrounding the enactment of MCL 211.53a supports this Court’s conclusion that Ford has stated valid claims under that statute. Additionally, our precedents interpreting and applying the common-law term “mutual mistake of fact” support this Court’s conclusion that Ford has stated valid claims under MCL 211.53a. Finally, the structure of the General Property Tax Act (GPTA), MCL 211.1 et seq., also supports this Court’s ultimate conclusion that Ford has stated valid claims under MCL 211.53a and, therefore, the lower courts erred.
A. CONSUMERS AND THE ENACTMENT OF MCL 211.53a
To fully understand the contours of these cases, I believe it is helpful to take note of the history surrounding the enactment of MCL 211.53a. This must necessarily begin with Consumers Power Co v Muskegon Co, 346 Mich 243, 246-247; 78 NW2d 223 (1956), overruled by Spoon-Shacket, Co, Inc v Oakland Co, 356 Mich 151; 97 NW2d 25 (1959). Notably, Consumers was decided shortly before the enactment of MCL 211.53a. In Consumers, the plaintiff paid excess taxes and later claimed that it was entitled to a refund because its payment was due to a mistake of fact made by both it and the assessor — the assessor mistakenly calculated the tax and made an excessive assessment, and the plaintiff failed to discover the error until after it paid the taxes. *451 At the time of the plaintiffs claim, the controlling statutory provision, 1948 CL 211.53, simply provided:
[The taxpayer] may pay any tax or special assessment, whether levied on personal or real property, under protest, to the treasurer, specifying at the time, in writing, signed by [the taxpayer], the grounds of such protest, and such treasurer shall minute the fact of such protest on the tax roll and in the receipt given. The person paying under such protest may, within 30 days and not afterwards, sue the township for the amount paid, and recover, if the tax or special assessment is shown to be illegal for the reason shown in such protest.
Despite the absence of any language in 1948 CL 211.53 pertaining to mutual mistake, the plaintiff nonetheless argued that it was entitled to a refund under equitable principles. This Court disagreed and refused to apply equitable principles in that case. The Consumers Court opined that taxation is controlled solely by statutory and constitutional provisions. Consumers, supra at 247, citing Langford v Auditor General, 325 Mich 585, 590; 39 NW2d 82 (1949). Because 1948 CL 211.53 did not permit a claim for taxes voluntarily paid because of a mutual mistake of fact, the Consumers Court rejected the plaintiffs claim. This Court reasoned that “[t]o grant the relief requested by the plaintiff would require this Court to exercise legislative prerogatives— namely, to write into the statute the right to recover taxes paid under mutual mistake. This cannot be done.” Consumers, supra at 251.
Justice SMITH, however, dissented and would have allowed the plaintiff to recoup its excess payments. For example, Justice SMITH asserted that the plaintiff did not voluntarily pay the excessive tax, reasoning:
It is my opinion that under existing Michigan law we require no legislative authority to order the restitution of *452 moneys paid to and received by the taxing authorities through mutual mistake of fact. It is enough that we have no valid statute forbidding it. It seems beyond question that the excess moneys were paid involuntarily. One who pays 10 times as much in taxes as he should, because of a mutual mistake of fact, can in no real sense be said to be paying “voluntarily”. He pays in ignorance, under a misapprehension of the true facts. Had he known the facts, the tax paid would have been only the sum authorized. The point need not be labored. [Consumers, supra at 260-261 (Smith, J., dissenting).]
Accordingly, because the plaintiff paid the taxes involuntarily, the dissent opined that the plaintiff could recover on its claim.
Further, Justice SMITH disagreed with the Consumers majority that equitable powers may not be employed in taxation cases. The exercise of equitable powers in tax cases, Justice SMITH reasoned, is not contrary to the principle that governmental powers of taxation are controlled by statutory and constitutional provisions. Rather, Justice SMITH viewed the exercise of equitable power as complementary to this principle. Moreover, the dissent observed that the law on mistake was clear that it is inequitable and unconscionable to allow anyone to retain monies and unjustly enrich himself because of another’s mistake. And it does not matter, according to Justice SMITH, that the government is the entity retaining the money or that the taxpayer was careless in making the overpayment. Justice SMITH argued that the law was well-settled on this point, and to hold otherwise, as the Consumers majority did, would result in a “double standard of morality.. . .” Id. at 256. Specifically, Justice SMITH questioned the majority’s rationale that individuals may not benefit through a mutual mistake of fact, but, at least in taxation cases, the government may benefit if the mistake is not timely *453 discovered. Therefore, Justice SMITH would have affirmed the judgment of the trial court and permitted the plaintiff to recoup the overpayment that resulted from the mutual mistake of fact.
Just two years after this Court issued its opinion in Consumers, however, the Legislature amended the GPTA and enacted MCL 211.53a. In doing so, the Legislature responded to the Consumers decision by providing a remedy in cases involving a mutual mistake of fact and thereby broadening the types of situations under which a taxpayer could claim a refund for overpayment. Moreover, roughly three years after Consumers was decided, this Court overruled Consumers in Spoon-Shacket, supra, and in doing so implied that had MCL 211.53a been in place when the Consumers plaintiff filed its claim, the plaintiff would have been permitted to recoup its overpayment. Spoon-Shacket, supra at 168.[1]
In light of the history surrounding the enactment of MCL 211.53a, what is at issue in these cases becomes clearer and, therefore, this Court’s conclusion that Ford has stated valid claims under MCL 211.53a finds additional support. Further, this Court’s conclusion that Ford has stated valid claims of mutual mistake of fact within the meaning of MCL 211.53a finds support and is consistent with our precedents.
*454 B. OUR PRIOR DECISIONS INTERPRETING AND APPLYING THE COMMON-LAW PHRASE “MUTUAL MISTAKE OF FACT” SUPPORT OUR CONCLUSION THAT FORD HAS STATED VALID CLAIMS UNDER MCL 211.53a
As noted in the majority opinion in these cases, the term “mutual mistake of fact” is a technical term that has acquired a peculiar meaning under the law. Ante at 439. Because the Legislature used this common-law term in MCL 211.53a and did not intend to alter the meaning of this term, it is necessary to examine how Michigan’s common law interprets the term “mutual mistake of fact.” Consistent with our precedents, this Court interprets the term “mutual mistake of fact” in MCL 211.53a the same as our common law: an erroneous belief, which is shared and relied on by both parties, about a material fact that affects the substance of the transaction. I believe, however, that it is also proper to examine not only how our case law defines the term “mutual mistake of fact,” but also how our case law applies that term. After such an examination, this Court’s conclusion that Ford has stated valid claims of mutual mistake of fact within the meaning of MCL 211.53a is consistent with our precedents.
For example, the majority opinion relies on Sherwood v Walker, 66 Mich 568; 33 NW 919 (1887), for its interpretation of the common-law term “mutual mistake of fact.” But the Sherwood Court’s application of the law to the facts in that case supports the conclusion that Ford has stated valid claims here. In Sherwood, the parties established the contract price for the cow on the mistaken belief that the cow was barren. Id. at 569-570. This Court reasoned that the contract should have been rescinded because the defendants inadvertently represented the fact that the cow was barren, and the plaintiff relied on and accepted this fact as the basis for the parties’ transaction. Id. at 577-578. The same *455 situation is presented in these cases. Here, Ford inadvertently reported certain property in its personal property statements, and the assessors relied on and accepted the information contained in the statements as the basis for the assessments. Accordingly, this Court must likewise conclude that a mutual mistake of fact occurred in these cases.
Moreover, I find persuasive those cases in which this Court has found that a mutual mistake of fact occurs when property is incorrectly identified and the identification is later relied on by the parties when they enter into a particular transaction. For example, in Lee State Bank v McElheny, 227 Mich 322, 324; 198 NW 928 (1924), the plaintiff bank brought suit to reform a mortgage given to the defendants, the property owners. The mortgage covered several parcels of real estate, but after the mortgage was recorded, it was discovered that one of the parcels listed was not actually owned by the defendants. The plaintiff argued that there was a mutual mistake and that the mortgage should be reformed to reflect the correct property that the defendants owned. The trial court agreed, and this Court affirmed that judgment. This Court reasoned that “[t]here was either a mutual mistake, or a mistake by the bank, accompanied by fraud on the part of [one of the defendants], and either one gives right to have reformation as to [this defendant].” Id. at 327. However, this Court found that the parties intended the mortgage to cover all the property actually owned by the defendants. Accordingly, this Court held that the trial court properly reformed the mortgage, opining as follows:
We are fully convinced that all parties to the mortgage understood the security was to cover the 19 feet of lot 173, and not the 19 feet of lot 175; for certainly the defendants did not intend to give a mortgage upon property they knew they did not own. Defendants are in no position to urge *456 that the mortgage was not taken in good faith. The bank wanted security and defendants gave the mortgage, and we are not inclined to say that a fraud was perpetrated instead of a mutual mistake committed. [Id. at 328.]
This Court reached an analogous result in Gordon v City of Warren Planning & Urban Renewal Comm, 388 Mich 82; 199 NW2d 465 (1972). In Gordon, the plaintiff wished to build low-rise multiple dwellings and submitted a proposal to the defendant city of Warren Planning and Urban Renewal Commission. When the defendant failed to approve the plan, the plaintiff brought suit. In the trial court, the defendant argued that the plaintiffs proposed construction was too close to Mound Road, which was set to be widened at an unspecified future date. The trial court suggested that the parties attempt to relocate the plaintiffs proposed dwellings. The parties followed the trial court’s suggestion and came to an agreement that some of the proposed dwellings would be relocated; this agreement was reflected in a subsequent judgment. After the judgment, however, it was discovered that the plaintiffs planning consultant incorrectly prepared and drafted a site plan that showed that Mound Road was narrower than it truly was. And this incorrect site plan was incorporated by reference into the trial court’s judgment. Accordingly, the relocated proposed dwellings as reflected in the judgment would still be in the path of a widened Mound Road.
On appeal, this Court concluded that the trial court’s judgment was erroneously entered because it was based on a mutual mistake of fact. We reasoned:
Plaintiffs contend that they entered into the agreement only because they believed their buildings would be west of the 240-foot line. Defendant asserts that a representative of plaintiffs made the mistake and that plaintiffs should be bound by it. It is true that the mistake was made by a planning consultant employed by plaintiffs. One of plain *457 tiffs’ construction personnel was, in fact, also aware of this mistake. However, it is also clear that plaintiffs themselves did not have any knowledge of this fact. Both plaintiffs and defendant honestly and in good faith believed that the site plan was proper and that the agreement worked out by the parties could be fulfilled. Thus, we hold that there was a mutual mistake of fact which occurred in the original judgment entered by the trial court. [Gordon, supra at 88-89.]
In other words, this Court concluded that the mutuality of the mistake occurred when both parties relied on the incorrect site plan and proceeded to enter into their agreement, and that fault was largely irrelevant.
In the instant cases, mutuality is similarly satisfied because both Ford and the assessors relied on the incorrect personal property statements when entering into their transactions. Ford did not intend to pay taxes on personal property that was nontaxable, and the assessors did not intend to assess nontaxable property. Accordingly, similar to how the incorrect listing of property in Lee and Gordon was found to have resulted in mutual mistakes of fact, so too must the incorrect reporting of the property in the instant cases be considered mutual mistakes of fact. And, under Gordon, it does not matter that Ford was the entity that initially made the error. What matters under Gordon is that both Ford and the assessors believed that the personal property statements were accurate and that the subsequent assessments based on the statements were incorrect.
Indeed, this very rationale is reflected in Consumers, supra, which served as the catalyst for the enactment of MCL 211.53a. I find it telling that both the majority and the dissent in Consumers seem to have categorized the events in that case as an instance of mutual mistake of fact. Again, the assessor in that case incorrectly calcu *458 lated the tax on the plaintiffs property, and this resulted in an excessive assessment. And the plaintiff did not realize that the assessment was excessive until after it paid the assessment in full. The plaintiff claimed that this was a mutual mistake of fact. It appears that both the majority and the dissent in Consumers agreed that a mutual mistake of fact occurred in that case; they simply disagreed on the dispositive issue whether the plaintiff was entitled to an equitable remedy. But both sides determined that the mistake in Consumers was the inaccurate calculation. And both the assessor and the plaintiff shared and relied on this mistake — the assessor in levying an excessive assessment and the plaintiff when it paid the excessive assessment in full. Finally, the majority and the dissent in Consumers necessarily opined that the mutual mistake affected the very nature of the assessment. Accordingly, the mistakes in these cases are indistinguishable from the mutual mistake of fact found in Consumers. Therefore, on the basis of our precedents applying this common-law term, and the Legislature’s apparent response to Consumers, our holding that Ford has stated valid claims of mutual mistakes of fact under MCL 211.53a finds additional support.
C. THE STRUCTURE OF THE GPTA
The majority opinion finds support for its conclusion that Ford has stated valid claims under MCL 211.53a by examining the structure of the GPTA. In short, the GPTA requires the assessor to ascertain what personal property is in his jurisdiction and assess it accordingly. In doing so, the assessor must exercise his best judgment and has many tools available to better fulfill his statutory responsibility. And while personal property statements greatly assist the assessor in carrying out *459 that responsibility, the assessor is not bound by the taxpayer’s statement. MCL 211.24(1). So when an assessor simply relies on a taxpayer’s personal property statement and subsequently calculates the assessment on the basis of this information alone — like in these cases — the assessor is effectively adopting the personal property statement as his own belief of what the taxpayer owns. Accordingly, under these circumstances, there is mutual understanding of what property the taxpayer owns, and this mutual understanding goes to the very nature of the transaction — an accurate tax assessment. Therefore, the GPTA and the assessment process lead this Court to conclude that mutual mistakes of fact occurred in these cases.
Further, while not a case brought under the GPTA, a similar result was reached in Schwaderer v HuronClinton Metro Auth, 329 Mich 258; 45 NW2d 279 (1951). In Schwaderer, the plaintiff contractor, rather than conducting its own survey when preparing its bid, relied on the acreage listed in a map prepared by the defendant. The plaintiffs bid was the lowest, and the parties entered into a written contract under which the plaintiff was to clear some of the defendant’s land for an artificial lake. However, the acreage listed on the map was incorrectly stated too low. The plaintiff subsequently brought suit after it expended considerably more resources clearing the land, claiming, among other things, entitlement to reformation of the contract on the basis of mutual mistake. The trial court agreed, and this Court affirmed. In doing so, this Court observed:
Under the facts in the case the conclusion is fully justified that defendant accepted the map as correct and, like the plaintiff, entered into the contract under a mistake of fact. If the mistake was not mutual, then the situation is one in which there was a mistake on the part of the *460 plaintiff and conduct on the part of defendant, acting through its officers and agents, of such character as to justify the granting of equitable relief.
If plaintiff is, as defendant argues, without remedy, the result is that defendant, as pointed out by the trial court, has been unjustly enriched through the performance of the contract by plaintiff in reliance on the representations made to him. To prevent such enrichment, resulting from mutual mistake, equity may properly grant relief. [Id. at 270-271.]
Similarly, both the assessors and Ford in the cases now before us relied on Ford’s statements as accurate and necessarily based the substance of their transactions on this erroneous belief. In other words, like the parties in Schwaderer, Ford and the assessors entered into their transactions with the shared understanding that the factual information that served as the basis for each assessment was accurate.
Additionally, the statutory scheme summarized earlier also leads to the conclusion that these cases are best categorized as instances of mutual mistakes of fact, not merely instances of ignorance of fact. Accordingly, I disagree with the Court of Appeals analysis in Gen Products Delaware Corp v Leoni Twp, unpublished opinion per curiam of the Court of Appeals, issued May 8, 2003 (Docket No. 233432), a case factually similar to the instant cases. In Gen Products Delaware Corp, the Court of Appeals held that the petitioner had not made out a claim of mutual mistake of fact under MCL 211.53a when it misreported several items in its personal property statements, which had, in turn, resulted in an excessive assessment. In support of its holding, the panel partially relied on the following reasoning:
The Restatement (First) of Restitution, § 6 Mistake (1937) defines a mistake as a “state of mind not in accord with the facts.” It goes on to state, “There may be igno *461 ranee of a fact without mistake as to it, since mistake imports advertence to facts and one is ignorant of many facts as to which he does not advert.” Here, the assessor based the assessment on the personal property statement, thus he was ignorant of the real facts and did not have a state of mind that allowed for a mutual mistake of fact. [Slip op at 3.]
As summarized earlier, and detailed in the majority opinion, however, this rationale ignores the fact that the GPTA places the responsibility on the assessor to ascertain the personal property located in his jurisdiction and to exercise sound judgment. Again, when an assessor simply relies on a taxpayer’s personal property statement and subsequently calculates the assessment on the basis of this information alone — like in these cases — the assessor is “adverting” to the facts in the personal property statement and adopting those facts as his own belief of what the taxpayer owns. Accordingly, these cases present instances of mutual mistakes of fact within the intended meaning of MCL 211.53a and the GPTA.
For the reasons stated above, I am simply unpersuaded by the arguments advanced by respondents and embraced by the Court of Appeals majority and the MTT that the mistakes in these cases are best characterized as unilateral under our existing law. Moreover, under their preferred interpretation, I would be hard-pressed to envision any situation where a mutual mistake of fact could be found. Rather, MCL 211.53a already accounts for distinct claims involving clerical errors made by both the assessor and the taxpayer in addition to claims of a mutual mistake of fact. So if this Court were to conclude that situations like the ones presented in these cases lacked mutuality within the meaning of MCL 211.53a and engage in the sticky business of assigning fault, then the phrase “mutual *462 mistake of fact” would be rendered meaningless. In other words, such a conclusion would necessarily adopt a rule that any mistake in the personal property statement, absent a clerical or typographical error, may not be remedied under MCL 211.53a. This is not a conclusion this Court should make because it would require rewriting the statute and effectively deleting the phrase “mutual mistake of fact” from MCL 211.53a. Instead, this Court has interpreted the term “mutual mistake of fact” consistent with its common-law meaning and in harmony with the Legislature’s apparent intent in enacting MCL 211.53a.
Weaver and Kelly, JJ., concurred with Cavanagh, J.

 Spoon-Shacket largely focused on the proper place of equity in taxation cases. Again, the Consumers majority reasoned that equitable principles do not apply to the law of taxation. Rather, the majority followed the principle that taxes voluntarily paid cannot be refunded in the absence of a controlling constitutional or statutory provision. The Spoon-Shacket Court, however, rejected this principle and instead preferred the rationale set forth in Justice Smith’s Consumers dissent. Nonetheless, this Court need not weigh in on this issue in the cases now before us because Ford grounds its petitions on MCL 211.53a and seeks a legal remedy, not an equitable remedy.