**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED JUNE 28, 2006

FORD MOTOR COMPANY,

      Petitioner-Appellant,

v                           No.  127422

CITY OF WOODHAVEN, and COUNTY
OF WAYNE,

      Respondents-Appellees.

FORD MOTOR COMPANY,

      Petitioner-Appellant,

v                           No.  127423

CITY OF STERLING HEIGHTS,

      Respondent-Appellee.

FORD MOTOR COMPANY,

      Petitioner-Appellant,

v                           No.  127424

TOWNSHIP OF BRUCE,

_____

BEFORE THE ENTIRE BENCH

CAVANAGH, J.

These cases call on this Court to interpret the meaning and applicability of the phrase "mutual mistake of fact" as it is used in MCL 211.53a. In each of these cases, petitioner Ford Motor Company (Ford) filed a personal property statement with the appropriate taxing jurisdiction, the respective respondents. But Ford misreported some of the information in its personal property statements. Because respondents' assessors accepted and relied on Ford's personal property statements as accurate when calculating Ford's tax liability, respondents issued tax bills for amounts in excess of what would have been due had the statements been accurate. Ford paid the taxes, but it later sought refunds under MCL 211.53a when it discovered the errors, claiming the excessive taxes were paid because of a mutual mistake of fact.

We hold that Ford has stated valid claims of mutual mistake of fact that were intended to be remedied under MCL 211.53a. In these cases, Ford and respondents shared and relied on an erroneous belief about a material fact that affected the substance of the transactions. Our conclusion is consistent with the Legislature's intent and the peculiar meaning the term "mutual mistake of fact" has acquired in our law. In dismissing Ford's petitions, the Michigan Tax Tribunal (MTT) adopted a wrong principle and misapplied the law by failing to give the proper meaning to the legal term "mutual mistake of fact." Further, we

2

hold that the MTT abused its discretion when it failed to allow Ford to amend its petition against respondent Bruce Township. Therefore, we reverse the judgments of the MTT and the Court of Appeals, and we remand these cases to the MTT for further proceedings consistent with this opinion.

## I. Facts and Procedural History

In each of these cases, Ford filed a personal property statement with the appropriate taxing jurisdiction, the respective respondents. But Ford mistakenly reported some of the information in its personal property statements and, therefore, overstated the quantity of taxable property it owned. Because respondents' assessors accepted and relied on Ford's personal property statements as accurate when calculating Ford's tax liability, respondents issued excessive tax bills. Without any party realizing that the tax bills were excessive, Ford paid the amounts due and respondents accepted Ford's payments.

Ford eventually discovered the errors in its personal property statements. Ford then filed three separate petitions with the MTT—one against the city of Romeo (which should have been filed against Bruce Township), one against the city of Sterling Heights, and one against the city of Woodhaven and Wayne County. In each petition, Ford argued that it paid excessive taxes because of a mutual mistake of fact and, thus, was entitled to a refund under MCL 211.53a. MCL 211.53a provides:

> Any taxpayer who is assessed and pays taxes in excess of the correct and lawful amount due because of a clerical error or mutual mistake of fact made by the assessing officer and the taxpayer may

3

recover the excess so paid, without interest, if suit is commenced within 3 years from the date of payment, notwithstanding that the payment was not made under protest.

Even though Ford filed three separate petitions, our analysis of the issue presented in these cases is the same. But because each petition was treated separately by the MTT and the Court of Appeals, we will detail each petition's relevant history.

## A. Bruce Township

After learning that it double reported certain assets, Ford filed a petition with the MTT against the city of Romeo.[1] Specifically, Ford claimed in this petition that it was entitled to a refund from Romeo under MCL 211.53a because a mutual mistake of fact occurred regarding the taxability of Ford's personal property. After considering the matter, the MTT sua sponte issued an order dismissing Ford's petition. The MTT concluded that it lacked subject-matter jurisdiction under MCL 205.735 because Ford did not protest the assessments to the Romeo Board of Review.[2] Further, the MTT held that the assessments at issue

---

[1] Apparently, Ford double reported certain assets after it completed a sale-leaseback transaction on these assets and failed to dispose of the assets' historical cost.

[2] MCL 205.735 provides, in relevant part:

(1) A proceeding before the tribunal is original and independent and is considered de novo. For an assessment dispute as to the valuation of property or if an exemption is claimed, the assessment must be protested before the board of review before the tribunal acquires jurisdiction of the dispute under subsection (2) . . . .

(2) The jurisdiction of the tribunal in an assessment dispute is invoked by a party in interest, as petitioner, filing a written petition

(continued…)

4

were not the result of a mutual mistake of fact because the assessments were solely

the result of Ford's failure to prepare accurate statements. Accordingly, the MTT

reasoned that it did not have subject-matter jurisdiction under MCL 211.53a

because there was no mutuality of mistake. In support of this conclusion, the

MTT relied on its opinion in *Gen Products Delaware Corp v Leoni Twp*, 2001 WL

432245 (Docket No. 249550, March 8, 2001), and on the Court of Appeals

majority opinion in *Wolverine Steel Co v Detroit*, 45 Mich App 671; 207 NW2d

194 (1973). Finally, the MTT opined that Ford should have sought relief from the

Michigan State Tax Commission under MCL 211.154.

Ford appealed to the Court of Appeals, but Romeo moved to dismiss the

appeal because it was not the taxing jurisdiction that assessed Ford's personal

property. While not addressing the merits of the petition, the Court of Appeals

---

(…continued)

> on or before June 30 of the tax year involved. Except in the
> residential property and small claims division, a written petition is
> considered filed by June 30 of the tax year involved if it is sent by
> certified mail on or before June 30 of that tax year. . . . In all other
> matters, the jurisdiction of the tribunal is invoked by a party in
> interest, as petitioner, filing a written petition within 30 days after
> the final decision, ruling, determination, or order that the petitioner
> seeks to review, or within 35 days if the appeal is pursuant to section
> 22(1) of 1941 PA 122, MCL 205.22. . . . An appeal of a contested
> tax bill shall be made within 60 days after mailing by the assessment
> district treasurer and the appeal is limited solely to correcting
> arithmetic errors or mistakes and is not a basis of appeal as to
> disputes of valuation of the property, the property's exempt status, or
> the property's equalized value resulting from equalization of its
> assessment by the county board of commissioners or the state tax
> commission.

5

denied Romeo's motion, reversed the MTT order, and remanded the matter to the MTT to address the issue of the necessary joinder or substitution of the parties. *Ford Motor Co v Romeo*, unpublished order of the Court of Appeals, entered September 13, 2002 (Docket No. 240649). Ford then filed a motion with the MTT to amend its petition to substitute Bruce Township for Romeo, as well as to make minor corrections. Ford's proposed amended petition again maintained that under MCL 211.53a, it was entitled to a refund because its personal property was reported and assessed twice, which Ford claimed was a mutual mistake of fact. Further, Ford argued that the MTT had jurisdiction to hear the case under MCL 205.731(b).[3]

The MTT granted Ford's motion to substitute Bruce Township for Romeo. But the MTT denied Ford's motion for leave to file an amended petition and dismissed the petition on the ground that Ford had still failed to invoke the MTT's subject-matter jurisdiction. Once again, the MTT held that because there was not a mutual mistake of fact, it lacked jurisdiction under MCL 211.53a. Further, the

---

[3] MCL 205.731 provides:

> The tribunal's exclusive and original jurisdiction shall be:
>
> (a) A proceeding for direct review of a final decision, finding, ruling, determination, or order of an agency relating to assessment, valuation, rates, special assessments, allocation, or equalization, under property tax laws.
>
> (b) A proceeding for refund or redetermination of a tax under the property tax laws.

6

MTT concluded that it lacked subject-matter jurisdiction because the proposed amended petition covered two parcels of property; therefore, the proposed petition violated the MTT's rule of procedure, 1999 AC, R 205.1240, which prohibits a petition from covering more than one parcel.[4] Ford appealed to the Court of Appeals.

In a split, published decision, the Court of Appeals affirmed the MTT's order. 264 Mich App 1; 689 NW2d 764 (2004). First, the Court of Appeals majority opined that the MTT had subject-matter jurisdiction over Ford's petition because the MTT is vested with the power and authority to adjudicate tax refund cases, citing *In re AMB*, 248 Mich App 144, 166-167; 640 NW2d 262 (2001). But the Court of Appeals majority agreed with the MTT that Ford was not entitled to relief under MCL 211.53a because there was not a mutual mistake of fact.

In this regard, the Court of Appeals referenced the history surrounding MCL 211.53a, as well as Black's Law Dictionary (7th ed), and opined that MCL 211.53a "requires that both the assessing officer and the taxpayer have the same erroneous belief regarding the same material fact, which belief directly caused both the excess assessment and excess payment of taxes." *Bruce Twp*, *supra* at 9. Notably, the Court of Appeals majority preferred its definition of "mutual mistake of fact" to that articulated by the MTT in *Gen Products Delaware Corp*, *supra*,

---

[4] In its proposed amended petition, Ford identified two parcels of property, 50-043-900-015-00 and 50-043-800-900-11.

because the majority believed that the MTT's characterization was "more complicated than necessary." *Id*. at 11.[5] Proceeding under its own understanding of MCL 211.53a, the Court of Appeals majority then concluded that Bruce Township and Ford were not operating under the same mistake of fact. According to the majority, the mistake was not mutual because Ford's mistake concerned its erroneous belief that certain assets were taxable, whereas Bruce Township's erroneous belief was that Ford's personal property statement was accurate. Moreover, the Court of Appeals majority reasoned that there was no mutual mistake of fact giving rise to a remedy under MCL 211.53a because the excessive tax was a direct result of Ford's sole mistake. Additionally, the majority rejected the proposition that the treatment of the phrase "mutual mistake" in contract law cases was applicable to property tax cases.

Therefore, the Court of Appeals majority held that the MTT properly concluded that Ford was not entitled to a refund under MCL 211.53a because there was no mutual mistake of fact. Moreover, the majority reasoned that the MTT properly denied Ford's motion to amend its petition because the amendment would have been futile in light of the MTT's conclusion that relief could not be granted under MCL 211.53a. Accordingly, the Court of Appeals majority held

---

[5] The Court of Appeals majority also disagreed with the interpretation of MCL 211.53a set forth in *Wolverine Steel Co*, *supra*.

8

that the MTT had the right and duty to dismiss Ford's petition, and it affirmed the order of the MTT.

The Court of Appeals dissent, however, would have reversed the order of the MTT. The Court of Appeals dissent agreed with the majority that the MTT had subject-matter jurisdiction to adjudicate Ford's claim, but for slightly different reasons. According to the dissent, the MTT confused the issue of subject-matter jurisdiction with whether Ford stated a claim under MCL 211.53a for which relief could be granted. Further, the dissent opined that the MTT had subject-matter jurisdiction under MCL 205.731(b). So when the MTT dismissed Ford's petition on the basis that it lacked subject-matter jurisdiction because Ford failed to state a claim under MCL 211.53a, the dissent would have held that the MTT erred as a matter of law.

Unlike the majority, however, the dissent reasoned that the MTT also erred in determining that Ford failed to allege a mutual mistake of fact under MCL 211.53a. The dissent reasoned that the MTT's interpretation of a mutual mistake of fact was excessively narrow and would effectively eliminate personal property from the scope of MCL 211.53a. Relying in part on *Carpenter v Ann Arbor*, 35 Mich App 608; 192 NW2d 523 (1971), the Court of Appeals dissent reasoned that both Ford and Bruce Township shared the same factual mistake, namely, that all the property listed in Ford's statement was taxable. Because both parties relied on this factual mistake, the dissent concluded, the parties operated under a mutual mistake of fact. Therefore, the Court of Appeals dissent would have reversed the

order of the MTT on the basis that the MTT erred in applying the law and adopting an incorrect legal principle.

Additionally, the Court of Appeals dissent opined that the MTT did not have the authority to dismiss sua sponte Ford's petition. Again, the dissent noted that the MTT had subject-matter jurisdiction and, therefore, it should not have dismissed the petition on this ground. Further, the dissent asserted that the MTT's other basis for dismissing the petition, failure to state a claim under MCL 211.53a, was akin to a ruling under MCR 2.116(C)(8). According to the dissent, this was effectively a grant of summary disposition erroneously issued without briefing. Finally, the Court of Appeals dissent observed that the MTT's refusal to allow Ford to amend its petition was an abuse of discretion requiring reversal, and that Ford should be allowed to split the petition into two petitions to comply with the MTT's rule of procedure.

### B. Sterling Heights

Like what occurred with its personal property statement filed with Bruce Township, Ford later learned that it double reported certain assets on its statement filed with the city of Sterling Heights. So Ford filed a petition with the MTT against Sterling Heights, seeking a refund under MCL 211.53a because a mutual mistake of fact occurred. In lieu of an answer, Sterling Heights moved for summary disposition under MCR 2.116(C)(8) and (10). Ford did not respond to Sterling Heights' motion. However, the MTT, for reasons virtually identical to those noted earlier in this opinion with regard to the Bruce Township petition,

10

granted the Sterling Heights' motion to dismiss. For example, the MTT held that Ford did not properly invoke the MTT's subject-matter jurisdiction because Ford failed to protest the assessments to the Sterling Heights Board of Review. Moreover, the MTT likewise held that Ford's incorrect reporting on its personal property statement was not a mutual mistake of fact made by both Ford and Sterling Heights. Therefore, the MTT held that it also lacked subject-matter jurisdiction under MCL 211.53a.

In a split, unpublished opinion per curiam, the Court of Appeals affirmed. *Ford Motor Co v Sterling Hts*, unpublished opinion per curiam of the Court of Appeals, issued October 5, 2004 (Docket No. 246379). The Court of Appeals decision was issued on the same day and by the same panel, resulted in the same split, and employed virtually the same reasoning as in the decision in *Bruce Twp*, *supra*.

### C. Woodhaven and Wayne County

Similar to what transpired with its personal property statements noted above, Ford later learned that its statement to the city of Woodhaven was inaccurate. In this personal property statement, Ford discovered that certain assets that it listed were classified incorrectly, not taxable personal property, retired, or idle. After this discovery, Ford filed a refund petition with the MTT against Woodhaven and Wayne County under MCL 211.53a, alleging that a mutual mistake of fact occurred. Woodhaven and Wayne County then moved to dismiss the petition under MCR 2.116(C)(4), asserting that the MTT lacked subject-matter

11

jurisdiction under MCL 211.53a. The MTT granted the motion to dismiss for the same reasons it dismissed Ford's other two petitions.

In a split, unpublished opinion per curiam, the Court of Appeals affirmed. *Ford Motor Co v Woodhaven*, unpublished opinion per curiam of the Court of Appeals, issued October 5, 2004 (Docket No. 246378). Likewise, the Court of Appeals decision was issued on the same day and by the same panel, resulted in the same split, and employed the same reasoning in the decisions in *Bruce Twp*, *supra*, and *Sterling Hts*, *supra*.

Ford sought leave to appeal in all three cases, arguing that the MTT and the Court of Appeals erred in interpreting and applying MCL 211.53a, as well as in denying Ford's motion to amend its Bruce Township petition. This Court granted leave to consider the judgments of the Court of Appeals. 474 Mich 886 (2005).

II. Standard of Review

Absent fraud, our review of a decision by the MTT is limited to determining whether the MTT erred in applying the law or adopting a wrong legal principle. *Catalina Marketing Sales Corp v Dep't of Treasury*, 470 Mich 13, 18-19; 678 NW2d 619 (2004). Further, the central dispute in these cases involves the proper interpretation and application of a statute, MCL 211.53a. This is a question of law that we review de novo. *Title Office, Inc v Van Buren Co Treasurer*, 469 Mich 516, 519; 676 NW2d 207 (2004).

III. Analysis

These cases call on this Court to interpret MCL 211.53a.[6] Specifically, these cases require us to interpret the meaning and applicability of the phrase "mutual mistake of fact" as it is used in that statutory provision. As noted earlier in this opinion, MCL 211.53a provides:

> Any taxpayer who is assessed and pays taxes in excess of the correct and lawful amount due because of a clerical error or mutual mistake of fact made by the assessing officer and the taxpayer may recover the excess so paid, without interest, if suit is commenced within 3 years from the date of payment, notwithstanding that the payment was not made under protest.

The primary goal of statutory interpretation is to give effect to the Legislature's intent. *Title Office*, *supra* at 519. The first step is to review the statute's language. *Id*. And if the statute is plain and unambiguous, then this Court will apply the statute as written. *Id*. Moreover, this Court is guided by MCL 8.3a, which provides:

> All words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.

---

[6] Apart from brief references in *Spoon-Shacket Co, Inc v Oakland Co*, 356 Mich 151; 97 NW2d 25 (1959), and *Booker v Detroit*, 469 Mich 892 (2003) (Young, J., dissenting), this Court has not had formal occasion to interpret MCL 211.53a.

13

Here, we agree with the Court of Appeals majority and dissent that the term "mutual mistake of fact" is a technical term that has acquired a peculiar meaning under the law. Indeed, the term has a defined common-law meaning.

### A. The Common-law Meaning of Mutual Mistake of Fact

This Court follows the principle that when a statute dealing with the same subject uses a common-law term and there is no clear legislative intent to alter the common law, this Court will interpret the statute as having the same meaning as under the common law. *Pulver v Dundee Cement Co*, 445 Mich 68, 75; 515 NW2d 728 (1994). Moreover, "common-law meanings are assumed to apply even in statutes dealing with new and different subject matter, to the extent that they appear fitting and in the absence of evidence to indicate contrary meaning." 2B Singer, Statutes and Statutory Construction (6th ed), § 50:03, p 152. Here, because there is nothing in MCL 211.53a or the General Property Tax Act (GPTA), MCL 211.1 *et seq*., that shows a legislative intent to alter the meaning the term "mutual mistake of fact" has acquired in our law, we will examine how Michigan's common law uses the term "mutual mistake of fact." Additionally, we are also cognizant that "it is a well-established rule of statutory construction that the Legislature is presumed to be aware of judicial interpretations of existing law when passing legislation." *Pulver*, *supra* at 75.

Moreover, because "mutual mistake of fact" is a legal term, resort to a legal dictionary to determine its meaning may also be helpful. *People v Jones*, 467 Mich 301, 304-305; 651 NW2d 906 (2002). "Mistake" is defined as

14

1. An error, misconception, or misunderstanding; an erroneous belief. 2. *Contracts*. The situation in which the parties to a contract did not mean the same thing – or when one or both, while meaning the same thing, formed untrue conclusions about the subject matter of the contract – as a result of which the contract may be rendered void. [Black's Law Dictionary (7th ed).]

Moreover, "mutual mistake" is defined as

1. A mistake in which each party misunderstands the other's intent. – Also termed *bilateral mistake*. 2. A mistake that is shared and relied on by both parties to a contract.  ●  A court will often revise or nullify a contract based on a mutual mistake about a material term. – Also termed (in sense 2) *common mistake*. [*Id*.]

Further, "mistake of fact" is defined as "[a] mistake about a fact that is material to a transaction." *Id.*

Accordingly, it is discernable from the various definitions set forth above that the term "mutual mistake of fact" is not limited to one particular area of the law; however, it is most commonly applicable to the law of contracts. As such, we disagree with the Court of Appeals majority and the MTT that contract law, or any other area of the law for that matter, has no place in our duty to ascertain the Legislature's intent and give effect to the common-law term "mutual mistake of fact."

Many law students are introduced to the law of mistake in their first-year contracts course by reading our decision in *Sherwood v Walker*, 66 Mich 568; 33 NW 919 (1887)—the famous barren cow case. In *Sherwood*, the parties contracted for the sale of a cow, and both parties believed and understood that the cow was barren and, thus, useless for breeding. After the contract was entered

15

into, but before delivery, it was discovered that the cow was pregnant. Because the fertile cow was worth considerably more than the agreed-upon price, the defendants refused to deliver the cow. The plaintiff sued for replevin and secured a favorable judgment.

On appeal, this Court reversed that judgment, opining that the trial court should have instructed the jury that if it found that both parties understood that the cow was barren at the time of contracting and it was later discovered that the cow was not barren, then the defendants had a right to rescind under a theory of mutual mistake of fact. *Id*. at 578. While acknowledging that this was a close case, this Court concluded:

> But it must be considered as well settled that a party who has given an apparent consent to a contract of sale may refuse to execute it, or he may avoid it after it has been completed, if the assent was founded, or the contract made, upon the mistake of a material fact,— such as the subject-matter of the sale, the price, or some collateral fact materially inducing the agreement; and this can be done when the mistake is mutual. . . .

* * *

> "The difficulty in every case is to determine whether the mistake or misapprehension is as to the substance of the whole contract, going, as it were, to the root of the matter, or only to some point, even though a material point, an error as to which does not affect the substance of the whole consideration." *Kennedy v. Panama, etc., Mail Co.*, L.R. 2 Q.B. 580, 588. [*Sherwood*, *supra* at 576-577.]

In light of these principles, this Court held that a mutual mistake of fact occurred. Specifically, the *Sherwood* Court reasoned that the mistake was mutual, and that the mistake went to the whole substance of the parties' agreement. In this

16

regard, this Court observed that the parties would not have made the contract of sale except upon the understanding that the cow was barren; therefore, the mistake "went to the very nature of the thing." *Id*. at 577.

Our review of our precedents involving the law of mistake indicates that the peculiar and appropriate meaning that the term "mutual mistake of fact" has acquired in our law has not changed since *Sherwood*, *supra*. See, e.g., *Lee State Bank v McElheny*, 227 Mich 322, 327-328; 198 NW 928 (1924); *Goldberg v Cities Service Oil Co*, 275 Mich 199; 266 NW 321 (1936); *Lake Gogebic Lumber Co v Burns*, 331 Mich 315; 49 NW2d 310 (1951); *McCleery v Briggs*, 333 Mich 522, 525; 53 NW2d 361 (1952); *Gordon v City of Warren Planning & Urban Renewal Comm*, 388 Mich 82, 88-89; 199 NW2d 465 (1972). And the term's meaning was not intended to be altered when the Legislature imported the common-law term "mutual mistake of fact" into MCL 211.53a. Accordingly, the phrase "mutual mistake of fact" must be construed and understood consistent with its peculiar meaning. Therefore, consistent with our case law, we interpret the phrase "mutual mistake of fact" in MCL 211.53a to mean an erroneous belief, which is shared and relied on by both parties, about a material fact that affects the substance of the transaction.

### B. Ford has Stated Valid Claims Under MCL 211.53a
### Based on Mutual Mistake of Fact

Consistent with our interpretation of the legal term "mutual mistake of fact" as it is used in MCL 211.53a, the key issue in these cases is whether there was an

17

erroneous belief shared and relied on by both Ford and respondents about a material fact that affected the substance of the transactions. Under our interpretation of MCL 211.53a, we hold that Ford has stated valid claims of mutual mistakes of fact that were intended to be remedied under MCL 211.53a.

Here, there is little doubt that a mistake occurred—the personal property statements erroneously overstated the amount of Ford's taxable property, including reporting the same property twice. This resulted in excessive assessments that were paid in full. Further, the mistakes made in these cases are best characterized as mutual. In our view, each assessor's erroneous belief that Ford's personal property statement was accurate does not practically differ from Ford's belief that the statement was accurate. In other words, if Ford believed that it owned certain personal property and reported it properly at the time, then Ford believed that each statement was accurate. Similarly, if each assessor believed that Ford's statement was accurate, then the assessor likewise believed Ford owned certain personal property and reported it properly. As such, the parties shared a mistaken belief about a material fact that went to the very nature of the transaction—that all the personal property Ford claimed in its personal property statements was taxable. And the parties relied on this shared, erroneous belief— respondents when they assessed the property, and Ford when it subsequently paid the excessive assessments. Therefore, we conclude that Ford has stated valid claims under MCL 211.53a under the theory of mutual mistake of fact because the

18

parties shared and relied on their erroneous beliefs about material facts that affected the substance of the assessments.[7]

### C. The Structure of the GPTA  Supports our Conclusion That Ford has Stated Valid Claims of Mutual Mistakes of Fact Under MCL 211.53a

Further, the nature of personal property statements and the scheme set forth under the GPTA also compels our conclusion that a mutual mistake of fact occurred in these cases.  Under the GPTA, personal property located within Michigan is subject to taxation by the applicable taxing authority.  MCL 211.1; MCL 211.14.  Further, MCL 211.10(1) provides that "[a]n assessment of all the property in the state liable to taxation shall be made annually in all townships, villages, and cities by the applicable assessing officer . . . ."  To this end, MCL 211.19(1) provides:

> A supervisor or other assessing officer, as soon as possible after entering upon the duties of his or her office or as required under the provisions of any charter that makes special provisions for the

---

[7] We here focus our analysis on MCL 211.53a, because Ford did not seek relief under MCL 211.53b.  We must note, however, that MCL 211.53b also deals with mutual mistakes of fact.  But MCL 211.53b is somewhat different in scope. For example, MCL 211.53b applies to both overpayments and underpayments, and it permits both the taxpayer and the assessor to file a claim.  These claims are also handled initially by a different body, and the time frame in which to bring a claim is different than that provided in MCL 211.53a.  However, we must also note that one year after the Court of Appeals decisions in the instant cases, the Legislature amended MCL 211.53b to provide for the possibility of relief if a taxpayer makes an error in preparing its statement of assessable personal property.  In the instant cases, however, we need not consider whether the language of MCL 211.53b, as amended, differentiates a mutual mistake from an error on a personal property statement such as Ford's because the Legislature enacted that amendment after these proceedings commenced and Ford filed its petitions under MCL 211.53a

19

assessment of property, shall ascertain the taxable property in his or her assessing district, the person to whom it should be assessed, and that person's residence.

To assist the assessing officer in ascertaining the taxable personal property in his jurisdiction, MCL 211.19(2) provides that if the assessing officer believes that a person possesses taxable personal property, the assessing officer must require that person to make a statement of all his personal property.[8] Long ago, this Court observed that "[t]he statements made by the property owners are not binding upon the assessors, and are for the purpose of assisting these officers in making a proper and fair assessment of the property. The valuations therein stated are not conclusive, and the assessor must exercise his own judgment in making the assessment." *United States Radiator Corp v Wayne Co*, 192 Mich 449, 452; 158 NW 1030 (1916) (internal citation omitted). Indeed, MCL 211.24(1)(f) provides, in relevant part, that when the assessor makes and completes the assessment roll, "[t]he assessor shall estimate the true cash value of all the personal property of each person, and set the assessed value and tentative taxable value down opposite the name of the person." It further states that "[i]n determining the property to be assessed and in estimating the value of that property, the assessor is not bound to follow the statements of any person, but shall exercise his or her best judgment." *Id.*

---

[8] The taxpayer's personal property statement must be completed and delivered to the assessor on or before February 20 of each year. MCL 211.19(2).

(continued…)

We are aware that it is understandably common for assessors to accept personal property statements as accurate and simply base their assessments on the information contained in these statements. However, this common practice does not relieve the assessor of the responsibility to ascertain the taxable property in his jurisdiction and to exercise his best judgment when making an assessment. Moreover, to help an assessor exercise his best judgment and, thus, make an accurate assessment, the GPTA gives the assessor many tools besides the ability to require a personal property statement from a property owner and subsequently rely on the submitted statement.[9] For example, if the assessing officer is satisfied that a personal property statement is incorrect, the assessing officer may examine, under oath, any person the assessing officer believes has knowledge of the personal property. MCL 211.22. Additionally, the assessing officer may send a written request to examine the taxpayer's property and books, and a certified personal property examiner of the taxing jurisdiction then conducts the examination and audits the records of the taxpayer.

In sum, the GPTA requires the assessor to ascertain what personal property is in his jurisdiction and assess it accordingly. In doing so, the assessor must

_____

(…continued)

And the statement must be in a form prescribed by the State Tax Commission. MCL 211.19(5).

[9] Significantly, under MCL 211.21, a person who willfully neglects or refuses to make out and deliver a personal property statement is guilty of a

(continued…)

21

exercise his best judgment and has many tools available to better fulfill his statutory responsibility. And while the personal property statements greatly assist the assessor in carrying out that responsibility, the assessor is not bound by the taxpayer's personal property statement. MCL 211.24(1); *United States Radiator Corp*, *supra* at 452. So when an assessor simply relies on a taxpayer's personal property statement and subsequently calculates the assessment on the basis of this information alone—like in these cases—the assessor is effectively adopting the personal property statement as his own belief of what the taxpayer owns. In other words, under these circumstances, there is a mutual understanding of what property the taxpayer owns, and this mutual understanding goes to the very nature of the transaction—an accurate tax assessment. Therefore, the GPTA and the assessment process itself lead us to the inescapable conclusion that mutual mistakes of fact occurred in these cases.

In sum, in these cases, the MTT erred in applying the law and adopting a wrong legal principle. Specifically, the MTT's interpretation of MCL 211.53a is inconsistent with the peculiar meaning the term "mutual mistake of fact" has acquired in our law. Similarly, the Court of Appeals interpretation and application of MCL 211.53a is at odds with MCL 211.53a and, thus, was erroneous.

---

(…continued)
misdemeanor. A person is also guilty of a misdemeanor under MCL 211.21 if he falsely answers questions concerning his personal property.

## D. The MTT Abused its Discretion in Denying Ford's Motion
## to Amend its Petition

In light of our holding that Ford has stated valid claims under MCL 211.53a, we must next decide whether the MTT abused its discretion when it failed to allow Ford to amend its petition against Bruce Township. This Court will not reverse a tribunal's decision to deny a party leave to amend a petition unless the decision constituted an abuse of discretion. *Ormsby v Capital Welding, Inc*, 471 Mich 45, 53; 684 NW2d 320 (2004). Further, a motion to amend should be granted unless one of the following particularized reasons exists: (1) undue delay, (2) bad faith or dilatory tactics, (3) repeated failure to cure deficiencies by amendment previously allowed, (4) undue prejudice to the opposing party, or (5) futility. *Sands Appliance Services, Inc v Wilson*, 463 Mich 231, 239-240; 615 NW2d 241 (2000). Here, the MTT denied Ford's motion to amend because it lacked subject-matter jurisdiction and Ford's petition covered two parcels in violation of the MTT's rule of procedure. While the Court of Appeals majority concluded that the MTT had subject-matter jurisdiction to hear Ford's claim, the majority nonetheless found that the MTT did not abuse its discretion when it denied Ford's motion because the amendment would be futile in light of its conclusion that Ford failed to state a claim under MCL 211.53a for which relief could be granted. We disagree.

Contrary to the conclusions reached by the MTT and the Court of Appeals majority, Ford has stated valid claims under MCL 211.53a. As such, futility is not

a legitimate particularized reason by which the MTT could have denied Ford's motion to amend. Therefore, the MTT abused its discretion in this respect. Further, we believe that the MTT abused its discretion when it denied Ford's motion to amend on the basis that the amended petition would violate the MTT's rule of procedure. In this regard, we find the Court of Appeals dissent persuasive and adopt the following reasoning as our own:

> The other reason articulated by the tribunal for dismissal, that the petition covers two parcels of property rather than one, does not rise to the level of the particularized reasons articulated by the Supreme Court for denying a motion to amend a petition. Petitioner's original petition dealt with five parcels of property. In its proposed amended petition, petitioner limited the petition to two parcels of personal property. The tribunal stated that part of the reason it would not grant the motion to amend was that the proposed amendment violated tribunal rule 1999 AC, R 205.1240 requiring separate petitions for each parcel of property. Principles of statutory interpretation apply to construction of administrative rules. This Court must enforce the intent of the rule drafters by applying the meaning plainly expressed. Lacking ambiguity, judicial interpretation is not permitted. *City of Romulus v Dep't of Environmental Quality*, 260 Mich App 54, 65; 678 NW2d 444 (2003). Therefore, we must enforce the plain language of the rule. The plain language of this rule requires petitioner to file two separate petitions for the personal property in question, because it is in different parcels.

> Even though the petition was flawed because it dealt with two parcels instead of one, the tribunal should not have dismissed the case and denied petitioner's motion to amend. The flaw in the petition does not rise to the level of undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice, or futility. Respondent would not be prejudiced by an amendment separating this petition into two petitions because the facts would not change, and respondent was placed on notice by the original petition. There has been no previous amendment or bad faith on the part of petitioner. Finally, the amendment would not be futile. Given that none of the particularized reasons articulated by the Supreme Court for denying

24

a motion to amend exists, the tribunal abused its discretion in denying petitioner's motion to amend. *Sands Appliance Services*, *supra* at 239-240. [*Bruce Twp*, *supra* at 25-27 (Griffin, P.J., dissenting).]

## IV. Conclusion

Simply stated, on the basis of the incorrect personal property statements, Ford believed it owed the assessed taxes and respondents believed that they were entitled to the amounts assessed. Consistent with the Legislature's apparent intent and our case law, the parties were mutually mistaken about a material fact that affected the substance of the assessments. Accordingly, the MTT and the Court of Appeals erred when they concluded that Ford did not state valid claims of mutual mistake of fact within the meaning of MCL 211.53a. Further, the MTT abused its discretion when it denied Ford's motion to amend its petition. Therefore, we reverse the judgments of the MTT and the Court of Appeals, and we remand these cases to the MTT for further proceedings consistent with this opinion.

Michael F. Cavanagh
Clifford W. Taylor
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

25

S T A T E   O F   M I C H I G A N

SUPREME COURT

FORD MOTOR COMPANY,

       Petitioner-Appellant,

v                                           No.  127422

CITY OF WOODHAVEN, and COUNTY
OF WAYNE,

       Respondents-Appellees.
_____

FORD MOTOR COMPANY,

       Petitioner-Appellant,

v                                           No.  127423

CITY OF STERLING HEIGHTS,

       Respondent-Appellee.
_____

FORD MOTOR COMPANY,

       Petitioner-Appellant,

v                                           No.  127424

TOWNSHIP OF BRUCE,

       Respondent-Appellee.
_____

CAVANAGH, J. (*concurring*).

       Obviously, I concur with the well-written majority opinion in this case.  I

write separately, however, to set forth additional reasons why I believe Ford has

stated valid claims under MCL 211.53a. Specifically, the history surrounding the enactment of MCL 211.53a supports this Court's conclusion that Ford has stated valid claims under that statute. Additionally, our precedents interpreting and applying the common-law term "mutual mistake of fact" support this Court's conclusion that Ford has stated valid claims under MCL 211.53a. Finally, the structure of the General Property Tax Act (GPTA), MCL 211.1 *et seq.*, also supports this Court's ultimate conclusion that Ford has stated valid claims under MCL 211.53a and, therefore, the lower courts erred.

### A. *Consumers* and the Enactment of MCL 211.53a

To fully understand the contours of these cases, I believe it is helpful to take note of the history surrounding the enactment of MCL 211.53a. This must necessarily begin with *Consumers Power Co v Muskegon Co*, 346 Mich 243, 246-247; 78 NW2d 223 (1956), overruled by *Spoon-Shacket, Co, Inc v Oakland Co*, 356 Mich 151; 97 NW2d 25 (1959). Notably, *Consumers* was decided shortly before the enactment of MCL 211.53a. In *Consumers*, the plaintiff paid excess taxes and later claimed that it was entitled to a refund because its payment was due to a mistake of fact made by both it and the assessor—the assessor mistakenly calculated the tax and made an excessive assessment, and the plaintiff failed to discover the error until after it paid the taxes. At the time of the plaintiff's claim, the controlling statutory provision, 1948 CL 211.53, simply provided:

> [The taxpayer] may pay any tax or special assessment, whether levied on personal or real property, under protest, to the treasurer, specifying at the time, in writing, signed by [the taxpayer],

2

the grounds of such protest, and such treasurer shall minute the fact of such protest on the tax roll and in the receipt given. The person paying under such protest may, within 30 days and not afterwards, sue the township for the amount paid, and recover, if the tax or special assessment is shown to be illegal for the reason shown in such protest.

Despite the absence of any language in 1948 CL 211.53 pertaining to mutual mistake, the plaintiff nonetheless argued that it was entitled to a refund under equitable principles. This Court disagreed and refused to apply equitable principles in that case. The *Consumers* Court opined that taxation is controlled solely by statutory and constitutional provisions. *Consumers, supra* at 247, citing *Langford v Auditor General*, 325 Mich 585, 590; 39 NW2d 82 (1949). Because 1948 CL 211.53 did not permit a claim for taxes voluntarily paid because of a mutual mistake of fact, the *Consumers* Court rejected the plaintiff's claim. This Court reasoned that "[t]o grant the relief requested by the plaintiff would require this Court to exercise legislative prerogatives—namely, to write into the statute the right to recover taxes paid under mutual mistake. This cannot be done." *Consumers*, *supra* at 251.

Justice Smith, however, dissented and would have allowed the plaintiff to recoup its excess payments. For example, Justice Smith asserted that the plaintiff did not voluntarily pay the excessive tax, reasoning:

> It is my opinion that under existing Michigan law we require no legislative authority to order the restitution of moneys paid to and received by the taxing authorities through mutual mistake of fact. It is enough that we have no valid statute forbidding it. It seems beyond question that the excess moneys were paid involuntarily. One who pays 10 times as much in taxes as he should, because of a

3

> mutual mistake of fact, can in no real sense be said to be paying "voluntarily". He pays in ignorance, under a misapprehension of the true facts. Had he known the facts, the tax paid would have been only the sum authorized. The point need not be labored. [*Consumers*, *supra* at 260-261 (Smith, J., dissenting).]

Accordingly, because the plaintiff paid the taxes involuntarily, the dissent opined that the plaintiff could recover on its claim.

Further, Justice Smith disagreed with the *Consumers* majority that equitable powers may not be employed in taxation cases. The exercise of equitable powers in tax cases, Justice Smith reasoned, is not contrary to the principle that governmental powers of taxation are controlled by statutory and constitutional provisions. Rather, Justice Smith viewed the exercise of equitable power as complementary to this principle. Moreover, the dissent observed that the law on mistake was clear that it is inequitable and unconscionable to allow anyone to retain monies and unjustly enrich himself because of another's mistake. And it does not matter, according to Justice Smith, that the government is the entity retaining the money or that the taxpayer was careless in making the overpayment. Justice Smith argued that the law was well-settled on this point, and to hold otherwise, as the *Consumers* majority did, would result in a "double standard of morality . . . ." *Id*. at 256. Specifically, Justice Smith questioned the majority's rationale that individuals may not benefit through a mutual mistake of fact, but, at least in taxation cases, the government may benefit if the mistake is not timely discovered. Therefore, Justice Smith would have affirmed the judgment of the

4

trial court and permitted the plaintiff to recoup the overpayment that resulted from the mutual mistake of fact.

Just two years after this Court issued its opinion in *Consumers*, however, the Legislature amended the GPTA and enacted MCL 211.53a. In doing so, the Legislature responded to the *Consumers* decision by providing a remedy in cases involving a mutual mistake of fact and thereby broadening the types of situations under which a taxpayer could claim a refund for overpayment. Moreover, roughly three years after *Consumers* was decided, this Court overruled *Consumers* in *Spoon-Shacket*, *supra*, and in doing so implied that had MCL 211.53a been in place when the *Consumers* plaintiff filed its claim, the plaintiff would have been permitted to recoup its overpayment. *Spoon-Shacket*, *supra* at 168.[1]

In light of the history surrounding the enactment of MCL 211.53a, what is at issue in these cases becomes clearer and, therefore, this Court's conclusion that Ford has stated valid claims under MCL 211.53a finds additional support. Further, this Court's conclusion that Ford has stated valid claims of mutual

---

[1] *Spoon-Shacket* largely focused on the proper place of equity in taxation cases. Again, the *Consumers* majority reasoned that equitable principles do not apply to the law of taxation. Rather, the majority followed the principle that taxes voluntarily paid cannot be refunded in the absence of a controlling constitutional or statutory provision. The *Spoon-Shacket* Court, however, rejected this principle and instead preferred the rationale set forth in Justice Smith's *Consumers* dissent. Nonetheless, this Court need not weigh in on this issue in the cases now before us because Ford grounds its petitions on MCL 211.53a and seeks a legal remedy, not an equitable remedy.

5

mistake of fact within the meaning of MCL 211.53a finds support and is consistent with our precedents.

### B. Our Prior Decisions Interpreting and Applying the Common-law Phrase "Mutual Mistake of Fact" Supports our Conclusion That Ford has Stated Valid Claims Under MCL 211.53a

As noted in the majority opinion in these cases, the term "mutual mistake of fact" is a technical term that has acquired a peculiar meaning under the law. *Ante* at 14. Because the Legislature used this common-law term in MCL 211.53a and did not intend to alter the meaning of this term, it is necessary to examine how Michigan's common law interprets the term "mutual mistake of fact." Consistent with our precedents, this Court interprets the term "mutual mistake of fact" in MCL 211.53a the same as our common law: an erroneous belief, which is shared and relied on by both parties, about a material fact affects the substance of the transaction. I believe, however, that it is also proper to examine not only how our case law defines the term "mutual mistake of fact," but also how our case law applies that term. After such an examination, this Court's conclusion that Ford has stated valid claims of mutual mistake of fact within the meaning of MCL 211.53a is consistent with our precedents.

For example, the majority opinion relies on *Sherwood v Walker*, 66 Mich 568; 33 NW 919 (1887), for its interpretation of the common-law term "mutual mistake of fact." But the *Sherwood* Court's application of the law to the facts in that case supports the conclusion that Ford has stated valid claims here. In *Sherwood*, the parties established the contract price for the cow on the mistaken

6

belief that the cow was barren. *Id*. at 569-570. This Court reasoned that the contract should have been rescinded because the defendants inadvertently represented the fact that the cow was barren, and the plaintiff relied on and accepted this fact as the basis for the parties' transaction. *Id*. at 577-578. The same situation is presented in these cases. Here, Ford inadvertently reported certain property in its personal property statements, and the assessors relied on and accepted the information contained in the statements as the basis for the assessments. Accordingly, this Court must likewise conclude that a mutual mistake of fact occurred in these cases.

Moreover, I find persuasive those cases in which this Court has found that a mutual mistake of fact occurs when property is incorrectly identified and the identification is later relied on by the parties when they enter into a particular transaction. For example, in *Lee State Bank v McElheny*, 227 Mich 322, 324; 198 NW 928 (1924), the plaintiff bank brought suit to reform a mortgage given to the defendants, the property owners. The mortgage covered several parcels of real estate, but after the mortgage was recorded, it was discovered that one of the parcels listed was not actually owned by the defendants. The plaintiff argued that there was a mutual mistake and that the mortgage should be reformed to reflect the correct property that the defendants owned. The trial court agreed, and this Court affirmed that judgment. This Court reasoned that "[t]here was either a mutual mistake, or a mistake by the bank, accompanied by fraud on the part of [one of the defendants], and either one gives right to have reformation as to [this defendant]."

7

*Id.* at 327. However, this Court found that the parties intended the mortgage to cover all the property actually owned by the defendants. Accordingly, this Court held that the trial court properly reformed the mortgage, opining as follows:

> We are fully convinced that all parties to the mortgage understood the security was to cover the 19 feet of lot 173, and not the 19 feet of lot 175; for certainly the defendants did not intend to give a mortgage upon property they knew they did not own. Defendants are in no position to urge that the mortgage was not taken in good faith. The bank wanted security and defendants gave the mortgage, and we are not inclined to say that a fraud was perpetrated instead of a mutual mistake committed. [*Id.* at 328.]

This Court reached an analogous result in *Gordon v City of Warren Planning & Urban Renewal Comm*, 388 Mich 82; 199 NW2d 465 (1972). In *Gordon*, the plaintiff wished to build low-rise multiple dwellings and submitted a proposal to the defendant city of Warren Planning and Urban Renewal Commission. When the defendant failed to approve the plan, the plaintiff brought suit. In the trial court, the defendant argued that the plaintiff's proposed construction was too close to Mound Road, which was set to be widened at an unspecified future date. The trial court suggested that the parties attempt to relocate the plaintiff's proposed dwellings. The parties followed the trial court's suggestion and came to an agreement that some of the proposed dwellings would be relocated; this agreement was reflected in a subsequent judgment. After the judgment, however, it was discovered that the plaintiff's planning consultant incorrectly prepared and drafted a site plan that showed that Mound Road was narrower than it truly was. And this incorrect site plan was incorporated by

reference into the trial court's judgment. Accordingly, the relocated proposed dwellings as reflected in the judgment would still be in the path of a widened Mound Road.

On appeal, this Court concluded that the trial court's judgment was erroneously entered because it was based on a mutual mistake of fact. We reasoned:

> Plaintiffs contend that they entered into the agreement only because they believed their buildings would be west of the 240-foot line. Defendant asserts that a representative of plaintiffs made the mistake and that plaintiffs should be bound by it. It is true that the mistake was made by a planning consultant employed by plaintiffs. One of plaintiffs' construction personnel was, in fact, also aware of this mistake. However, it is also clear that plaintiffs themselves did not have any knowledge of this fact. Both plaintiffs and defendant honestly and in good faith believed that the site plan was proper and that the agreement worked out by the parties could be fulfilled. Thus, we hold that there was a mutual mistake of fact which occurred in the original judgment entered by the trial court. [*Gordon, supra* at 88-89.]

In other words, this Court concluded that the mutuality of the mistake occurred when both parties relied on the incorrect site plan and proceeded to enter into their agreement, and that fault was largely irrelevant.

In the instant cases, mutuality is similarly satisfied because both Ford and the assessors relied on the incorrect personal property statements when entering into their transactions. Ford did not intend to pay taxes on personal property that was nontaxable, and the assessors did not intend to assess nontaxable property. Accordingly, similar to how the incorrect listing of property in *Lee* and *Gordon* was found to have resulted in mutual mistakes of fact, so too must the incorrect

9

reporting of the property in the instant cases be considered mutual mistakes of fact. And, under *Gordon*, it does not matter that Ford was the entity that initially made the error. What matters under *Gordon* is that both Ford and the assessors believed that the personal property statements were accurate and that the subsequent assessments based on the statements were incorrect.

Indeed, this very rationale is reflected in *Consumers*, *supra*, which served as the catalyst for the enactment of MCL 211.53a. I find it telling that both the majority and the dissent in *Consumers* seem to have categorized the events in that case as an instance of mutual mistake of fact. Again, the assessor in that case incorrectly calculated the tax on the plaintiff's property, and this resulted in an excessive assessment. And the plaintiff did not realize that the assessment was excessive until after it paid the assessment in full. The plaintiff claimed that this was a mutual mistake of fact. It appears that both the majority and the dissent in *Consumers* agreed that a mutual mistake of fact occurred in that case; they simply disagreed on the dispositive issue whether the plaintiff was entitled to an equitable remedy. But both sides determined that the mistake in *Consumers* was the inaccurate calculation. And both the assessor and the plaintiff shared and relied on this mistake—the assessor in levying an excessive assessment and the plaintiff when it paid the excessive assessment in full. Finally, the majority and the dissent in *Consumers* necessarily opined that the mutual mistake affected the very nature of the assessment. Accordingly, the mistakes in these cases are indistinguishable from the mutual mistake of fact found in *Consumers*. Therefore, on the basis of

10

our precedents applying this common-law term, and the Legislature's apparent response to *Consumers*, our holding that Ford has stated valid claims of mutual mistakes of fact under MCL 211.53a finds additional support.

## C. The Structure of the GPTA

The majority opinion finds support for its conclusion that Ford has stated valid claims under MCL 211.53a by examining the structure of the GPTA. In short, the GPTA requires the assessor to ascertain what personal property is in his jurisdiction and assess it accordingly. In doing so, the assessor must exercise his best judgment and has many tools available to better fulfill his statutory responsibility. And while personal property statements greatly assist the assessor in carrying out that responsibility, the assessor is not bound by the taxpayer's statement. MCL 211.24(1). So when an assessor simply relies on a taxpayer's personal property statement and subsequently calculates the assessment on the basis of this information alone—like in these cases—the assessor is effectively adopting the personal property statement as his own belief of what the taxpayer owns. Accordingly, under these circumstances, there is mutual understanding of what property the taxpayer owns, and this mutual understanding goes to the very nature of the transaction—an accurate tax assessment. Therefore, the GPTA and the assessment process lead this Court to conclude that mutual mistakes of fact occurred in these cases.

11

Further, while not a case brought under the GPTA, a similar result was reached in *Schwaderer v Huron-Clinton Metro Auth*, 329 Mich 258; 45 NW2d 279 (1951). In *Schwaderer*, the plaintiff contractor, rather than conducting its own survey when preparing its bid, relied on the acreage listed in a map prepared by the defendant. The plaintiff's bid was the lowest, and the parties entered into a written contract under which the plaintiff was to clear some of the defendant's land for an artificial lake. However, the acreage listed on the map was incorrectly stated too low. The plaintiff subsequently brought suit after it expended considerably more resources clearing the land, claiming, among other things, entitlement to reformation of the contract on the basis of mutual mistake. The trial court agreed, and this Court affirmed. In doing so, this Court observed:

> Under the facts in the case the conclusion is fully justified that defendant accepted the map as correct and, like the plaintiff, entered into the contract under a mistake of fact. If the mistake was not mutual, then the situation is one in which there was a mistake on the part of the plaintiff and conduct on the part of defendant, acting through its officers and agents, of such character as to justify the granting of equitable relief.
>
> If plaintiff is, as defendant argues, without remedy, the result is that defendant, as pointed out by the trial court, has been unjustly enriched through the performance of the contract by plaintiff in reliance on the representations made to him. To prevent such enrichment, resulting from mutual mistake, equity may properly grant relief. [*Id*. at 270-271.]

Similarly, both the assessors and Ford in the cases now before us relied on Ford's statements as accurate and necessarily based the substance of their transactions on this erroneous belief. In other words, like the parties in *Schwaderer*, Ford and the

12

assessors entered into their transactions with the shared understanding that the factual information that served as the basis for each assessment was accurate.

Additionally, the statutory scheme summarized earlier also leads to the conclusion that these cases are best categorized as instances of mutual *mistakes* of fact, not merely instances of *ignorance* of fact. Accordingly, I disagree with the Court of Appeals analysis in *Gen Products Delaware Corp v Leoni Twp*, unpublished opinion per curiam of the Court of Appeals, issued May 8, 2003 (Docket No. 233432), a case factually similar to the instant cases. In *Gen Products Delaware Corp*, the Court of Appeals held that the petitioner had not made out a claim of mutual mistake of fact under MCL 211.53a when it misreported several items in its personal property statements, which had, in turn, resulted in an excessive assessment. In support of its holding, the panel partially relied on the following reasoning:

> The Restatement (First) of Restitution, § 6 Mistake (1937) defines a mistake as a "state of mind not in accord with the facts." It goes on to state, "There may be ignorance of a fact without mistake as to it, since mistake imports advertence to facts and one is ignorant of many facts as to which he does not advert." Here, the assessor based the assessment on the personal property statement, thus he was ignorant of the real facts and did not have a state of mind that allowed for a mutual mistake of fact. [Slip op at 3.]

As summarized earlier, and detailed in the majority opinion, however, this rationale ignores the fact that the GPTA places the responsibility on the *assessor* to ascertain the personal property located in his jurisdiction and to exercise sound judgment. Again, when an assessor simply relies on a taxpayer's personal

13

property statement and subsequently calculates the assessment on the basis of this information alone—like in these cases—the assessor is "adverting" to the facts in the personal property statement and adopting those facts as his own belief of what the taxpayer owns.  Accordingly, these cases present instances of mutual *mistakes* of fact within the intended meaning of MCL 211.53a and the GPTA.

For the reasons stated above, I am simply unpersuaded by the arguments advanced by respondents and embraced by the Court of Appeals majority and the MTT that the mistakes in these cases are best characterized as unilateral under our existing law.  Moreover, under their preferred interpretation, I would be hard-pressed to envision any situation where a mutual mistake of fact could be found.  Rather, MCL 211.53a already accounts for distinct claims involving clerical errors made by both the assessor and the taxpayer in addition to claims of a mutual mistake of fact.  So if this Court were to conclude that situations like the ones presented in these cases lacked mutuality within the meaning of MCL 211.53a and engage in the sticky business of assigning fault, then the phrase "mutual mistake of fact" would be rendered meaningless.  In other words, such a conclusion would necessarily adopt a rule that any mistake in the personal property statement, absent a clerical or typographical error, may not be remedied under MCL 211.53a.  This is not a conclusion this Court should make because it would require rewriting the statute and effectively deleting the phrase "mutual mistake of fact" from MCL 211.53a.  Instead, this Court has interpreted the term "mutual mistake of fact"

14

consistent with its common-law meaning and in harmony with the Legislature's apparent intent in enacting MCL 211.53a.

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly